## State of Connecticut *v.* William Ledbetter

Speziale, C. J., Peters, Healey, Parskey and Armentano, Js.

Argued November 3—decision released December 29, 1981

*Suzanne Zitser,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Joette K. Rubin,* assistant public defender, for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Richard L. Shiffrin,* assistant state's attorney, for the appellee (state).

Parskey, J. Upon a trial to the jury, the defendant was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). In his appeal, the defendant claims error in the trial court's denial of his motions to suppress photographic, out-of-court, and in-court identifications.

The following facts are not disputed: At approximately 2 p.m. on March 14, 1978, Steven Palmer, a gasoline station manager, while making a deposit

at the Connecticut Bank and Trust Company branch office located on Main Street in East Hartford, became the victim of a robbery. He had approached the rear of the bank, carrying money in a blue vinyl bank bag, when suddenly he heard a voice from behind demanding that he turn over the deposit bag. Palmer turned around and saw a black man pointing a sawed-off, double-barreled shotgun at him. Palmer paused for a few seconds and the man repeated his demand for the bag, at which time Palmer tossed the bag to him. Upon catching the bag, the man turned away and walked to a red Dodge van that was backed into a parking place on the bank lot and entered the van through its passenger side. Palmer ran to his car and in his car proceeded to follow the van from East Hartford into Hartford, eventually to a parking lot on Charter Oak Place. Palmer made no attempt to enter the lot in pursuit of the van because he feared a confrontation with this armed individual. Instead, Palmer requested a pedestrian on the scene to call the police.

Later that day Palmer told the East Hartford police that he had been robbed by a black male, in his early twenties, approximately five feet nine inches tall, weighing 150 pounds, with medium dark skin and a small Afro-style haircut, who was wearing brown pants and a rust color jacket. From Palmer's description the police prepared a composite sketch of the gunman. Palmer was also shown a number of photographs but recognized none as bearing any resemblance to the individual who stole his deposit bag. The defendant's photograph was not included in this display. On March 20, six days later, Palmer identified the defendant's photograph from a display of eight black and white

photographs. The next day Palmer again identified the defendant's photograph from a display of eight color photographs. In both displays, only the defendant's picture was repeated. On March 28, a week later, Palmer identified the defendant from among eight individuals, three of whom were black, being arraigned individually in geographical area No. 14 of the Court of Common Pleas on other charges. Shortly thereafter, Palmer again identified the defendant in a one-on-one confrontation at the courthouse. At the trial, the court denied the defendant's motions to suppress the several identifications, including Palmer's positive in-court indentification.

The robbery occurred in daylight. The elapsed time that Palmer had the robber in view ranged from ten to forty seconds, ten to twenty seconds of which was face to face at a distance of twenty feet.

# I

Identification of persons suspected of criminal conduct may impinge on constitutional rights, usually the right to counsel embodied in the sixth amendment to the United States constitution and the fourteenth amendment right to due process. The right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby* v. *Illinois*, 406 U.S. 682, 688–89, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972). The defendant claimed that his right to counsel attached in this case when he was arraigned on other charges at the Court of Common Pleas. This claim is without merit. The right to counsel attaches only where the adversarial judicial criminal proceedings have been initiated with

respect to the particular crime as to which the suspect is being identified. *Boyd* v. *Henderson,* 555 F. 2d 56, 61 (2d Cir.), cert. denied, 434 U.S. 927, 98 S. Ct. 410, 54 L. Ed. 2d 286 (1977). Whatever vitality remained in *State* v. *Oliver,* 161 Conn. 348, 354, 288 A.2d 81 (1971), in this respect after *State* v. *Middleton,* 170 Conn. 601, 609–10, 368 A.2d 66 (1976), was completely sapped by *State* v. *Packard,* 184 Conn. 258, 270, 439 A.2d 983 (1981), in which we said: "In *State* v. *Oliver,* 161 Conn. 348, 354, 288 A.2d 81 (1971), this court held 'that a pretrial lineup or confrontation, for the purposes of identification, when the police investigation has reached the accusatory stage, is such a critical step in a criminal prosecution that under the sixth amendment to the United States constitution a suspect is at that time entitled to the assistance of counsel. While the *Wade* case [388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967)] factually involved a defendant under arrest and the defendant James H. Oliver was not under arrest at the time the police [conducted the identification procedure], the fact of prior arrest is not decisive. The significant constitutional factor is whether at the time of the pretrial identification the relationship between the police and the defendant was "accusatory" or "investigatory." ' Subsequent to this decision, *Kirby* v. *Illinois* [406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972)], *State* v. *Townsend* [167 Conn. 539, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975)], and *State* v. *Middleton* [170 Conn. 601, 368 A.2d 66 (1976)], were decided. The rules set out in the latter three cases overrule and replace that portion of *State* v. *Oliver* quoted above." As for the language employed in *State* v. *Lee,* 177 Conn. 335, 341, 417 A.2d 354 (1979), in the

context of an assumed legal situation, it is sufficient to observe that legal propositions which are based on the shifting sands of supposititious cases are frequently washed away with the changing juridical tides. In sum, except for Palmer's in-court identification, which the defendant challenges only on the basis of the claimed legal infirmity of one or more of the out-of-court identifications, the applicable basis for consideration of the several identifications is due process.

## II

"In determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first. it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the 'totality of the circumstances.' . . ." (Citations omitted.) *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980).

In applying this standard to the identifications in the present case, we examine the first challenged photographic display. Officer Leonard Boyle of the East Hartford police department testified that he obtained from the Hartford police department a black and white photo of the defendant taken in 1976, combined it with seven other photos of black males of approximately the same age and physical characteristics and, on March 20, handed the eight photos to Palmer for his examination. Palmer selected the defendant's picture and told Boyle "that looked a lot like the guy, but [he] could not be sure from the picture." During the entire pro-

cess Boyle made no suggestions to Palmer about the defendant or about the display. After Palmer selected the defendant's photo, Boyle told him that the picture he selected was of Willie Ledbetter.

With respect to the first challenged display the defendant does not claim, nor is there any basis for a claim, that the display itself was suggestive or that Boyle was suggestive in any respect in the selection process. Rather, the defendant's claim is that the motion to suppress the selected photo from this display should have been granted because Palmer was not positive in making his selection. Challenges of this nature do not rise to the level of constitutional dimension. Such challenges go to the weight rather than to the admissibility of the evidence. *People* v. *Gonzales,* 68 Cal. 2d 467, 472, 439 P.2d 655 (1968), cert. denied, 393 U.S. 1055, 89 S. Ct. 693, 21 L. Ed. 2d 696 (1969) ; *Adams* v. *United States,* 302 A.2d 232, 235 (D.C. App. 1973) ; *State* v. *Bauman,* 77 Wash. 2d 938, 941, 468 P.2d 684 (1970). The test to be applied for the admission of out-of-court identification evidence is reasonable probability. *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903 (1972). Absent constitutional barriers, so long as the witness has identified the defendant with reasonable probability, whether the identification is the result of a photo display, a line-up, a show-up or otherwise, the evidence is admissible. The question, in the final analysis, is one of relevancy. The usual test for relevancy is whether the evidence offered renders a material fact, in this case the reliability of the witness' in-court identification, more probable than it would be without the evidence. *State* v. *Ward,* 172 Conn. 163, 167–68, 374 A.2d 168 (1976) ; see McCormick, Evidence (2d Ed.) § 185.

The color photographic display, the arraignment observation at the geographical area No. 14 courthouse, and the one-on-one confrontation at the same courthouse have one thing in common; they all involve in varying degrees suggestive confrontations. The suggestive ingredient in the photo display is the recurrence of a single photo, the defendant's, in two separate displays. Pictorial recurrence is suggestive because by emphasizing the defendant it increases the risk of misidentification. *Simmons* v. *United States,* 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Harden,* 175 Conn. 315, 320, 398 A.2d 1169 (1978). The mischief involved in the arraignment observation is the real possibility that the victim of one crime, armed with the knowledge that the suspect is being charged with another crime, possibly of the same character, is more likely to leap to the conclusion that the person being arraigned in front of him committed both crimes. The one-on-one confrontation or "show-up" is obviously suggestive and widely condemmed as such. *Stovall* v. *Denno,* 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *Passman* v. *Blackburn,* 652 F.2d 559, 573 (5th Cir. 1981); *United States* v. *Green,* 436 F.2d 290, 291 (D.C. Cir. 1970); *Willin* v. *Ajello,* 496 F. Sup. 804, 807 (D. Conn. 1980), aff'd, 652 F.2d 55 (2d Cir. 1981). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil* v. *Biggers,* 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *State* v. *Watson,* 165 Conn. 577, 589, 345 A.2d 532 (1973); see also *State* v. *Gordon,* 185

Conn. 402, 413–14, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982).

The fact that a particular confrontation is impermissibly suggestive, however, does not automatically exclude the resulting identification. Because the linchpin in determining the admissibility of identification testimony is reliability, the central question is whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. *Manson* v. *Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil* v. *Biggers*, supra, 199; *State* v. *Gold*, 180 Conn. 619, 652–58, 430 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Anderson*, 178 Conn. 287, 291–92, 422 A.2d 323 (1979). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers*, supra, 199–200; *State* v. *Williams*, 173 Conn. 545, 551, 378 A.2d 588 (1977). "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson* v. *Brathwaite*, supra 114; *State* v. *Williams*, supra, 551.

The reliability of the several identifications is revealed by the sequence of events. In the photo display on March 14, the day of the robbery, Palmer identified no one as a possible suspect. It is of some significance that the defendant's photo

was not among those photos. In the black and white display on March 20, Palmer selected only the defendant's photo. Although the identification was not positive, it was Palmer who sought to satisfy himself that he had identified the right man. The same situation occurred on March 21 with respect to the color display. Again, Palmer selected only the defendant's photo. Again, Palmer was reluctant to make a positive identification even though he was more certain on the 21st than on the day before. Again, the defendant's photo was taken the same month as the robbery. Palmer's arraignment observation is also significant. There is no evidence that Palmer was aware of the name of the individuals being arraigned or of the charges against them; in fact, the indication is to the contrary. Nevertheless, Palmer nudged Boyle as soon as the defendant was presented, pointing him out as the robber. Because he had only a side view of the defendant, it was Palmer who insisted on a face to face confrontation, after which there was no question in Palmer's mind that he had identified the person who robbed him. The handmaiden of suggestiveness is susceptibility. By his reactions, Palmer reveals himself as an unlikely candidate for subliminal seductions.

Although Palmer's view of the robber face to face lasted about fifteen or twenty seconds, a good hard look will pass muster even if it occurs during a fleeting glance. *Coleman* v. *Alabama,* 399 U.S. 1, 4–6, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970); cf. *People* v. *Taylor,* 123 Ill. App. 2d 430, 436, 258 N.E. 2d 823 (1970) (identification made by victim intoxicated at time of robbery admissible because manner of identification applies only to weight of evidence and not to admissibility). During this short period, Palmer was able to observe the robber's approxi-

mate age, height, weight, hair style, and skin tone as well as the color of his pants and jacket. He was also able to give the police enough information for the preparation of a composite sketch. It is noteworthy that the record is barren of any information suggesting that either the verbal description or the composite was inaccurate. Furthermore, the several identifications took place over a period of two weeks after the robbery, a short enough time so that Palmer's memory of the events and the actors was still fresh. The court was justified in admitting the various identifications under the "totality of the circumstances."

There is no error.

In this opinion the other judges concurred.