STATE OF CONNECTICUT *v.* VICTOR M. CUBANO
(4294)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued November 7, 1986—decision released February 3, 1987

*Kathleen C. Stone,* special public defender, with whom, on the brief, was *Sylvia Kemp-Orino,* special public defender, for the appellant (defendant).

*Dennis J. O'Connor,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellee (state).

SPALLONE, J. After a jury trial, the defendant was convicted of the crimes of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2). On appeal, the defendant claims that the trial court erred (1) in failing to grant the defendant's motion to suppress identification testimony, (2) in refusing to grant the defendant's request for an in-court lineup, (3) in failing to dismiss the charges against the defendant because his warrantless arrest was illegal, and (4) in admitting into evidence certain items of clothing.

The jury reasonably could have found the following facts. At about 12:10 a.m. on May 6, 1984, H, a clerk in a Seven Eleven store in Newington, was working at the cash register located toward the front of the store. At that time, a person came into the store whom H later described as approximately five feet six inches or five feet seven inches tall, wearing either green or blue mechanics pants, a blue fishing hat, brown gloves, a jacket, and a tannish nylon stocking over his face. H also reported that the person was carrying a .38 caliber snubnose revolver in his right hand.

The intruder approached H and said, "Give me the money or I'll blow your head off." In response, H gave him money from one of two cash registers. The robber placed the money in his left pants pocket. The robber then said, "Where's the rest of it?" H then gave the intruder additional money.

The robber then commanded H to "lay on the floor." H did so and from that position he observed the robber's feet as he left the store and turned left. H raised himself from the floor and saw the robber pull the stocking mask from his head. He noticed that the robber had dark hair. H immediately called the police, who arrived within minutes. He could not, however, describe the face of the robber to the police.

As the robber was walking away from the counter, a witness, W, drove into the parking lot and pulled up to the area of the store's front door. W saw the robber emerge from the store, turn left and, while directly in front of W, pull off his mask. From his position in his car about ten feet from the robber, W had a profile view of the robber for about five to ten seconds before the robber went around the corner of the building.

W followed the robber by driving his car around the side of the building. At that point, W noticed a red Cadillac with a white vinyl top with its lights on and

the engine running. As the Cadillac moved past W, he saw the robber hop into the passenger side of the vehicle. W noted that the registration plate of the Cadillac was YD2636 and that the vehicle turned left on Richard Street, then right on Willard Avenue, heading north. W then returned to the store and relayed this information to the clerk. W described the robber as a Puerto Rican male, five feet five inches tall, wearing a nylon mask, blue pants, a dark jacket and a hat. He also described the driver of the car as a male with a short afro hairstyle.

Officer Al Zdanys, a Newington police officer who had arrived on the scene, broadcast the description of the Cadillac and license plate over the police radio. He described the license plate number as YD2636 with the caveat that W may have transposed the last two digits. He also stated that the car was occupied by two males.

Detective Robert Seiler, a Newington police officer, heard the dispatch and waited in a parking lot on the Berlin Turnpike because it seemed to him to be a possible escape route. Seiler observed a red Cadillac, northbound, containing two males and bearing the license plate number YD2663. Five to six minutes had elapsed from the time Seiler heard Zdanys' original dispatch to the time he saw the suspects' car. Seiler followed the car on the Berlin Turnpike into the town of Wethersfield. While trailing the car he requested back-up officers. He finally stopped the car on the Charter Oak Parkway near the Folly Brook overpass.

The defendant exited the car but reentered it upon Seiler's order. As soon as the back-up arrived, both occupants were patted down for weapons, handcuffed and placed in the rear of Seiler's cruiser. The police discovered a .38 caliber snubnose revolver on the floor of the Cadillac. The revolver contained six live rounds of ammunition and was operable.

Officer Zdanys drove W to the location where the defendant's vehicle had been stopped. When they arrived, the Cadillac was surrounded by five or six police cruisers. W walked up to Seiler's cruiser, looked into the rear seat, observed the occupants and positively identified the defendant as the robber and the other as the driver of the getaway car.

At 12:24 a.m., less than fifteen minutes from the original dispatch reporting the robbery, the police summoned a tow truck for the getaway car. The defendant and the driver were separated and transported for booking. After the defendant and the driver left his cruiser, Seiler checked under the back seat and found eighty-five dollars in cash, which had not been there when Seiler had checked the rear seat at the beginning of his shift. No one but the defendant and the driver had been in the rear seat of the cruiser between the time when Seiler had initially checked the seat and when he discovered the eighty-five dollars.

Following the robbery, H and his girlfriend, who had been in a different room at the time of the robbery, had gone to the police station. When returning to the store from the station, they discovered clothing on Willard Avenue along the route taken by the defendant after the robbery. They retrieved the blue pants, gloves and hat that the robber had discarded. After these items were turned over to the police, eighteen dollars was found in the left pocket of the pants. The owner of the store discovered that $101 were missing along with some change. At day break, Seiler discovered the stocking mask on Willard Avenue. The defendant was subsequently tried by a jury and found guilty as charged.

The defendant first claims that the trial court erred by failing to suppress all identification testimony resulting from the roadside identification of the defendant.

"In order to determine whether the identification procedures violated the defendant's due process rights, a case by case inquiry must be made as to (1) whether the identification procedures were unnecessarily suggestive, and, if so, (2) whether the identification was nevertheless reliable based upon an examination of the totality of the circumstances." *State* v. *Amarillo,* 198 Conn. 285, 291, 503 A.2d 146 (1986); see *State* v. *Findlay,* 198 Conn. 328, 336–37, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Perez,* 198 Conn. 68, 73, 502 A.2d 368 (1985); *State* v. *Nims,* 8 Conn. App. 631, 636, 513 A.2d 1280 (1986). Assuming, under the circumstances in this case, that the show-up was unnecessarily suggestive, we fail to see where the defendant has shown that the identification was unreliable. " 'A defendant who moves to suppress identification bears the initial burden of proving that the identification resulted from an unconstitutional procedure.' " *State* v. *Evans,* 200 Conn. 350, 354, 511 A.2d 1006 (1986), quoting *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984); *State* v. *Nims,* supra.

The factors to be considered in assessing the reliability of an identification include the opportunity of the witness to view the individual, the witness's degree of attention, the accuracy of the witness's prior description, the time interval between the incident and the identification, and the witness's degree of certainty about the identification. *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Evans,* supra; *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); *State* v. *Nims,* supra, 638–39.

W had the opportunity to observe the defendant from five to ten seconds from a distance of about ten feet. Although W's view of the defendant was brief, "a good hard look will pass muster even if it occurs during a

fleeting glance." *State* v. *Ledbetter,* 185 Conn. 607, 615, 441 A.2d 595 (1981). His degree of attention was manifest, which is unsurprising considering that the defendant was exiting a store and removing a stocking mask. W's prior description dovetailed with that of the store clerk and certainly matched the clothes subsequently found and attributed to the defendant. The time interval between the view and the identification was minimal and the certainty of the identification was positive.

We hold, on the basis of the totality of the circumstances, that the trial court did not err in holding that W's identification was sufficiently reliable to warrant its admission into evidence. It was then for the jury to decide, after the defendant exercised his right to cross-examine, what weight to give such evidence. *State* v. *Perez,* supra, 76; *State* v. *Tate,* 9 Conn. App. 141, 145–46, 516 A.2d 1375 (1986).

Next, the defendant claims error in the trial court's denial of his motion for an in-court lineup. Six days before trial, the defendant filed a "motion for lineup" requesting that the defendant be seated in the audience section with other males similar in appearance. The court heard argument by counsel, reviewed legal authority proffered by the state, noted the date when the motion was filed, and denied the motion. During trial, W identified the defendant as the person he had identified as the robber on the night of the crime. The defendant claims that under *United States* v. *Archibald,* 734 F.2d 938, modified, 756 F.2d 223 (2d Cir. 1984), he was entitled to an in-court lineup as described above. In *Archibald,* the Second Circuit Court of Appeals held that an in-court identification of a black defendant seated next to defense counsel during trial was impermissibly suggestive, although harmless error.

" 'There is no constitutional requirement that an in-court identification confrontation be conducted as a

lineup or be otherwise free of suggestion. An in-court testimonial identification must be excluded if it is the product of an out-of-court confrontation arranged by the state, which was unnecessarily suggestive and conducive to irreparable misidentification.' . . . '[W]ithout more, the mere exposure of the accused to a witness in the suggestive setting of a criminal trial does not amount to the sort of impermissible confrontation with which the due process clause is concerned.' " (Citations omitted.) *State* v. *Smith,* 200 Conn. 465, 469–70, 512 A.2d 189 (1986).

We held in our discussion of the defendant's first claim of error that the out-of-court identification of the defendant was sufficiently reliable under the totality of circumstances to warrant its admission into evidence. Under the principles set forth in *State* v. *Smith,* supra, therefore, the in-court identification was not the product of an out-of-court confrontation "conducive to irreparable misidentification," so as to require an in-court lineup as a matter of due process. The decision whether to allow the defendant to sit among the courtroom audience was therefore within the discretion of the trial judge. Practice Book § 782; *State* v. *Smith,* supra, 470; *State* v. *Felder,* 7 Conn. App. 489, 494, 509 A.2d 542 (1986); see *United States* v. *Domina,* 784 F.2d 1361, 1369 (9th Cir. 1986); *United States* v. *Sebetich,* 776 F.2d 412, 421 (3d Cir. 1985); cf. *United States* v. *Archibald,* supra. Here, the court heard arguments of counsel, read *United States* v. *Archibald,* supra, noted that the motion had been filed "relatively on the eve of trial,"[1] and explained that the defendant could determine whether there was any "taint" in the identification through cross-examination. See *State* v. *Smith,* supra, 470

---

[1] Motions for a lineup pursuant to Practice Book § 782 should be filed within ten days of plea. See Practice Book § 811. Although pleas in this case were entered on November 27, 1984, the motion was not filed until March 7, 1985.

("[t]he innate weakness in any in-court testimonial identification is grounds for assailing its weight rather than its admissibility"). We find no abuse of discretion in the trial court's denial of the defendant's motion for an in-court lineup.

The defendant's third claim of error, that the court should have dismissed the case because his arrest was made without probable cause and was therefore illegal, is without merit. The basis for this claim stems from *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965), where the court ordered the dismissal of criminal charges against a defendant who had been arrested under a warrant insufficient to satisfy the probable cause requirement of the fourth amendment to the United States constitution. *Licari,* however, was expressly overruled by our Supreme Court in *State* v. *Fleming,* 198 Conn. 255, 262–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), where the court concluded that an illegal arrest imposes no jurisdictional barrier to a defendant's subsequent prosecution. Id.; see also *State* v. *Payton,* 8 Conn. App. 345, 348–50, 512 A.2d 976 (1986); *State* v. *Hansen,* 8 Conn. App. 26, 28–29, 510 A.2d 465 (1986). While an illegal arrest may still be grounds for exclusion of tainted evidence; *State* v. *Ryerson,* 201 Conn. 333, 338, 514 A.2d 337 (1986); *State* v. *Federici,* 179 Conn. 46, 425 A.2d 916 (1979); it is not, by itself, grounds for dismissal. *State* v. *Fleming,* supra, 263. Here, the defendant has not claimed that the arrest led to the admission of inadmissible evidence nor has he made any attempt to demonstrate how the arrest otherwise impaired the fairness of his prosecution. *State* v. *Fleming,* supra, 263. We therefore find no merit to this claim. We note that any question as to the retroactive application of *Fleming* was laid to rest in *State* v. *Ryerson,* supra, where the court held that *Fleming* was to be applied retroactively.

The defendant's final claim avers error in the trial court's admission into evidence of the blue pants, gloves, hat and stocking mask that were recovered from Willard Avenue, the route taken by the defendant in fleeing the scene of the crime. The defendant claims that there was insufficient evidence to connect the clothing to the defendant. We disagree. Both H and W provided nearly identical descriptions of the items of clothing the defendant was wearing. The place where they were found was on the route taken by the defendant. Money was found in the pants pocket where the victim had indicated the defendant had placed it. The clothing size was compatible with the defendant's size. The evidence was more than sufficient to connect the defendant to the clothing.

There is no error.

In this opinion the other judges concurred.