STATE OF CONNECTICUT *v.* WILFREDO VEGA
(6115)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 13, 1987—decision released February 16, 1988

*Carl D. Eisenman,* public defender, for the appellant (defendant).

*Dennis O'Connor,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from a judgment of conviction, after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a), threatening in violation of General Statutes § 53a-62 (a) (1) and larceny in the sixth degree in

violation of General Statutes § 53a-125b.[1] He claims that the trial court erred (1) in denying his motion to suppress an eyewitness identification, (2) in giving the so-called *Ledbetter* instruction to the jury, and (3) in failing to give a jury instruction concerning the drawing of inferences. The defendant also claims that the evidence presented was insufficient to prove that he was guilty of the crimes charged beyond a reasonable doubt. We find no error.

The jury could reasonably have found the following facts. On January 24, 1986, at approximately 12:37 a.m., a pharmacy at 158 Hillside Avenue in Hartford was burglarized. Keith Harlan, an off-duty police officer living across the street from the pharmacy, heard a loud noise and went to investigate. Once outside, Harlan also heard the pharmacy's alarm bell. Shortly thereafter, he observed a man carrying an object, emerging from a broken window in the pharmacy. Harlan pursued the man as he walked away from the pharmacy, carrying what the police officer recognized as a "boom box" portable radio. When the man realized Harlan was following him, he turned and, brandishing a knife, warned "Back off or I'll cut you." The man then fled with Harlan in pursuit, until Harlan lost sight of him in an alley. Harlan described the perpetrator to other police officers who arrived to investigate the burglary, and in response was given the defendant's name as a possible suspect. Approximately one week later, Harlan obtained a photograph of the defendant from police files and identified him as the person he had chased from the burglary scene. Harlan subsequently selected the defendant's photograph from a six-photo array and also positively identified him at

[1] The defendant subsequently entered a plea of nolo contendere to a persistent felony offender charge, General Statutes § 53a-40 (b).

trial. A "boom box" radio was the only item reported missing by the proprietor of the pharmacy after the burglary.

## I

We find no merit in the defendant's first claim of error, namely that the trial court wrongly denied the defendant's motion to suppress the identifications of the defendant as the perpetrator of the burglary.[2]

A defendant who moves to suppress identification evidence obtained by allegedly unconstitutional procedures bears the initial burden of proving (1) that the procedures were unnecessarily suggestive, and (2) that the resulting identification was unreliable in the totality of the circumstances. See *State* v. *Williams,* 203 Conn. 159, 173–74, 523 A.2d 1284 (1987), and cases cited therein. " 'Only if the procedures used to identify the accused are unnecessarily suggestive are we required to analyze the factors that determine the reliability of an identification for due process purposes.' " Id., 174, quoting *State* v. *Miller,* 202 Conn. 463, 470, 522 A.2d 249 (1987).[3] Although the trial court found that the viewing by Officer Harlan of the single photograph of the defendant was unnecessarily suggestive, it also found that the resulting identification was reliable "in the totality of the circumstances." We agree.

The present case clearly tracks *Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

---

[2] While the defendant's motion to suppress attacks only the "identification of the defendant through comparison of photographs," a review of the transcript reveals an attack on the in-court identification as well.

[3] These factors include the witness's opportunity to view the defendant, his degree of attention, the accuracy of his description, his level of certainty and the amount of time passing between the crime and the identification. *State* v. *Mitchell,* 204 Conn. 187, 202, 527 A.2d 1168, cert. denied,     U.S.     , 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987); *State* v. *Cubano,* 9 Conn. App. 548, 553, 520 A.2d 250 (1987).

The *Manson* court, given a strikingly similar factual scenario, upheld the identification of a narcotics dealer by a Connecticut state police officer when that officer first viewed a single photograph of the defendant which he obtained upon the suggestion of a fellow officer. The court highlighted two aspects of reliability which are equally significant here. First, the United States Supreme Court concluded that the eyewitness skills of a police officer increased the reliability of his identification; " '[the police officer] certainly was paying attention to identify the [perpetrator]. . . . He was a trained police officer who realized that later he would have to find and arrest the person with whom he was dealing.' " (Citation omitted.) Id., 108. Second, the court also ruled that the fact that the officer obtained and viewed the photograph of the defendant while alone protected against the potential coercion sometimes found in other identification procedures. "Although identifications arising from single-photograph displays may be viewed in general with suspicion, see *Simmons* v. *United States,* [390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)], we find in the instant case little pressure on the witness to acquiesce in the suggestion that such a display entails. . . . There thus was little urgency and [the officer] could view the photograph at his leisure. And since [the officer] examined the photograph alone, there was no coercive pressure to make an identification arising from the presence of another. The identification was made in circumstances allowing care and reflection." *Manson* v. *Brathwaite,* supra, 116.

"The reliability inquiry delineated in *Manson* is fact-bound and made on an ad hoc basis. Generally, where the admissibility of evidence depends upon a preliminary question of fact to be determined by the court, 'its decision is not to be reversed unless there is clear and manifest error.' *Engelke* v. *Wheatley,* 148 Conn.

398, 410–11, 171 A.2d 402 (1961); see Practice Book § 4061; *State* v. *Brigandi,* 186 Conn. 521, 530, 442 A.2d 927 (1982)." *State* v. *Mitchell,* 204 Conn. 187, 203, 527 A.2d 1168, cert. denied,    U.S.   , 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). Given the facts of the present case, we do not find that the trial court committed "clear and manifest error" in denying the defendant's motion to suppress.[4]

## II

The defendant next claims error in the jury instruction that, with respect to identification, "a good hard look may pass muster even if it occurs during a fleeting glance." The defendant argues that this language was inappropriate under the facts of this case. We disagree.

The language in question is derived from *State* v. *Ledbetter,* 185 Conn. 607, 615, 441 A.2d 595 (1981), where, in more restrictive language than here, the *Ledbetter* court stated that "a good hard look *will* [rather than *may*] pass muster even if it occurs during a fleeting glance." (Emphasis added.) See also *State* v. *Cubano,* 9 Conn. App. 548, 553–54, 520 A.2d 250 (1987). The *Ledbetter* witness was a robbery victim who viewed his assailant for approximately fifteen to twenty seconds in a face to face confrontation and was able to observe his approximate age, height, weight, hair style, skin tone and the color of his pants and jacket.

The facts of the present case present a scenario even more favorable than that found in *Ledbetter.* While the time between the incident and identification is substantially the same, the eyewitness in the present case observed not only those characteristics supplied by the victim in *Ledbetter,* but in addition noted the burglar's

---

[4] Because we conclude that the out-of-court identification was properly admitted, we need not address the attack on the in-court identification. See *State* v. *Cubano,* 203 Conn. 81, 96 n.11, 523 A.2d 495 (1987).

build, race, presence of facial hair, knife, the "boom box" radio he carried, and the furtive movement of the defendant's eyes as he glanced about.

The defendant argues that the factors surrounding the identification in the present case are insufficient to warrant a *Ledbetter* instruction, and asks us to establish a per se standard for determining when such an instruction should be given, based primarily upon the length of the time an identifying witness views a defendant. This we will not do. Each case must be judged on its own facts. Setting standardized guidelines for the use of the instruction defeats its express purpose of impressing upon the jury that in some circumstances, a brief although detailed and focused viewing can be a sufficient basis for identification *despite* its brevity. For example, in *State* v. *Cubano,* supra, the court quoted the *Ledbetter* language in upholding an identification by an eyewitness who viewed the defendant's profile for only five to ten seconds. We conclude that it was not error to give the instruction under the facts of this case.

## III

The defendant's third claim of error is that the trial court erred in failing to charge the jury that any conclusion to be drawn from the evidence, which is consistent with the innocence of the accused, must prevail. See *State* v. *Dumlao,* 3 Conn. App. 607, 616, 491 A.2d 404 (1985). The defendant contends that the trial court's failure to give this charge diluted the state's burden of proof by rendering the instruction on reasonable doubt "inadequate and unclear." We disagree.

The defendant failed to preserve this claim for appeal in a proper manner, but we address it because by its terms it implicates a fundamental constitutional right, and because a limited review of the record discloses that the claim is duly of constitutional proportions. *State*

v. *Huff,* 10 Conn. App. 330, 334, 523 A.2d 906 (1987); *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891 (1987). Upon a full review of the defendant's claim, however, we conclude that there was not in fact a deprivation of the defendant's constitutional right to a fair trial. *State* v. *Huff,* supra; *State* v. *Thurman,* supra, 307.

The United States Supreme Court has held that when examining a claimed error based upon a failure to give a requested instruction on the presumption of innocence, the proper standard for review is an examination of the "totality of the circumstances" surrounding the trial: "[T]he failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under *Taylor* [v. *Kentucky,* 436 U.S. 478, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978)], such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." *Kentucky* v. *Whorton,* 441 U.S. 786, 789, 99 S. Ct. 2088, 60 L. Ed. 2d 640, reh. denied, 444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121 (1978).

Applying this standard of review to the present case, we conclude that based upon the totality of the circumstances the defendant was not deprived of a constitutionally fair trial.

## IV

The defendant's final claim of error is that the evidence was insufficient to prove he was guilty of the crimes charged beyond a reasonable doubt. "It is rudimentary that we do not retry the facts or evaluate the credibility of witnesses. *Bowman* v. *Williams,* 5 Conn. App. 235, 238, 497 A.2d 1015 (1985)." *State* v. *Nieves,* 13 Conn. App. 60, 66, 534 A.2d 1231 (1987).

The defendant's guilty verdict must stand if " '[t]he jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.' " *State* v. *Dumlao,* supra, 613, quoting *State* v. *Giorgio,* 2 Conn. App. 204, 211, 477 A.2d 134 (1985). The evidence must also be construed in a manner most favorable to sustaining the jury's verdict. *State* v. *Nieves,* supra, 66. Applying this analysis, we find that there was sufficient evidence, if believed by the jury, to sustain the defendant's conviction of the crimes charged.

There is no error.

In this opinion the other judges concurred.

