## STATE OF CONNECTICUT *v.* DONALD W. FENN, JR.
### (6019)

SPALLONE, NORCOTT and FOTI, Js.

Argued June 3—decision released September 20, 1988

*John R. Williams,* for the appellant (defendant).

*Jay Huntington,* deputy assistant state's attorney, with whom were *Susann E. Gill,* assistant state's attorney, and, on the brief, *Dennis Santore,* former state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), robbery in the third degree in violation of General Statutes § 53a-136, and assault of a victim sixty or older in the third degree in violation of General Statutes § 53a-61a. The defendant claims that the trial court erred (1) in admitting the victim's in-court and out-of-court identifications of the defendant, (2) in restricting the defendant's cross-examination of the victim, (3) in refusing to give a requested jury instruction on the problems of eyewitness identification, and (4) in giving jury instructions which usurped the factfinding role of the jury and shifted the state's burden of proof. We find no error.

The jury could reasonably have found the following facts. On July 7, 1986, at approximately 12:30 p.m., a man came to the door of the home of the victim, Philomena Gooley. Posing as a utility company employee, he asked Gooley to replenish his water jug. Gooley took the jug and locked the screen door. When she returned with the water, the man burst into the house and a struggle ensued. Gooley kicked the intruder. He hit her, kicked her, and pushed her against the wall. She bit his right index finger and tore off his false moustache. The intruder then dragged her into the bedroom and demanded money, which she gave him. He then pushed

Gooley into the bathroom, immobilized her with tape, threatened to kill her, and then left the premises. Gooley freed herself and called the police. When the police arrived, Gooley was taken to the hospital emergency room, treated and released.

On the day after the assault, Gooley described her attacker to the police as a dark complexioned white male, five feet eight to ten inches tall, weighing about 180 pounds, with a husky build, short dark hair, brown eyes and wearing a yellow construction hat, dirty white cotton gloves, jeans and a dirty short sleeve shirt. The same day, when shown a photographic array in which one of the pictures was of the defendant, Gooley was unable to identify the assailant, although she returned to the defendant's photograph several times saying that it was "pretty close" and that her assailant looked "something like that." Thereafter, Gooley participated in the preparation of a composite picture of her assailant, the results of which did not completely satisfy her. Two weeks after the attack, she positively identified the defendant as her assailant while he was being arraigned in the Torrington courthouse on traffic charges. She also positively identified the defendant at trial.

The attack took place in full daylight and lasted thirty to thirty-five minutes. During this time, the victim was wearing her glasses and had an opportunity to observe her assailant at very close range. The victim also made every effort to observe the man in order to be better able to identify him later.

I

The defendant claims that the trial court violated his constitutional right to due process by denying his motion to suppress the victim's out-of-court identification and by admitting her in-court identification of him. The defendant contends that the procedure whereby the

victim viewed the defendant at an unrelated arraignment was unnecessarily suggestive and that the resulting out-of-court identification was unreliable. He also contends that the victim's in-court identification was tainted by the earlier improper identification and should not have been admitted. We disagree.

"The determination of whether an identification procedure offends a defendant's due process rights depends on (1) whether the procedure was impermissibly and unnecessarily suggestive, and (2) if so, whether the identification was nevertheless reliable based on the totality of the circumstances." *State* v. *Bell,* 13 Conn. App. 420, 424, 537 A.2d 496 (1988), citing *State* v. *Pollitt,* 205 Conn. 132, 162, 531 A.2d 125 (1987). "An identification procedure is unnecessarily suggestive when it ' "give[s] rise to a very substantial likelihood of irreparable misidentification." ' *State* v. *Fullwood,* 193 Conn. 238, 243–44, 476 A.2d 550 (1984), quoting *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)." *State* v. *Williams,* 203 Conn. 159, 174, 523 A.2d 1284 (1987).

Our Supreme Court has held that arraignment observations are inherently suggestive because of the "real possibility that the victim of one crime, armed with the knowledge that the suspect is being charged with another crime, possibly of the same character, is more likely to leap to the conclusion that the person being arraigned in front of him committed both crimes." *State* v. *Ledbetter,* 185 Conn. 607, 613, 441 A.2d 595 (1981). The court has also held, however, that such procedures, while suggestive, may not be constitutionally infirm if the identification is " ' "nevertheless reliable based on examination of the 'totality of the circumstances.' " ' " *State* v. *Fullwood,* supra, 244; *State* v. *Hinton,* 196 Conn. 289, 295, 493 A.2d 836 (1985).

In this case, even though the identification procedure may have been unnecessarily suggestive, we conclude that the victim's identification of the defendant was clearly reliable in light of the totality of the circumstances. The factors to be considered in determining the reliability of a victim's identification are (1) the victim's opportunity to view the criminal at the time of the crime, (2) the victim's degree of attention, (3) the accuracy of the victim's prior description of the criminal, (4) the level of certainty demonstrated by the victim at the confrontation, and (5) the length of time between the crime and the confrontation. *State* v. *Amarillo,* 198 Conn. 285, 293, 503 A.2d 146 (1986).

In this case, the victim had an excellent opportunity to observe her assailant face to face for a significant period of time. She testified that she paid a high degree of attention to the assailant so that she could later identify him. She also gave police a description of her assailant that was detailed enough for the police to put together a photographic array of suspects and to create a composite picture. As to the level of certainty demonstrated at the confrontation, the victim was unequivocal in her belief that the defendant was her assailant. At the arraignment, the first time the defendant entered the courtroom, the victim told the police officer sitting with her that she thought that he was her assailant but was unsure because he was wearing glasses. The defendant left the courtroom, returning a few minutes later without the glasses. At this point the victim became nervous and upset, began crying and appeared very frightened. She told the officer that she was sure that the defendant was the person who had assaulted and robbed her. The victim's " 'reluctance to make an immediate uncategorical identification of the defendant is not evidence of an initial misidentification but rather demonstrates the conduct of a witness exercising independence of judgment under stressful

conditions.' " *State* v. *Arroyo,* 13 Conn. App. 687, 691, 539 A.2d 581 (1988), quoting *State* v. *Perez,* 198 Conn. 68, 74, 502 A.2d 368 (1985). As for the time factor, since only two weeks had elapsed between the attack on the victim and her identification of the defendant, the assault was still fresh in her mind. See *State* v. *Ledbetter,* supra, 616.

" 'The reliability inquiry . . . is factbound and made on an ad hoc basis. Generally, where the admissibility of evidence depends upon a preliminary question of fact to be determined by the court, "its decision is not to be reversed unless there is clear and manifest error." *Engelke* v. *Wheatley,* 148 Conn. 398, 410–11, 171 A.2d 402 (1961); see Practice Book § 4061; *State* v. *Brigandi,* 186 Conn. 521, 530, 442 A.2d 927 (1982).' *State* v. *Mitchell,* 204 Conn. 187, 203, 527 A.2d 1168, cert. denied, 484 U.S. 927 [108 S. Ct. 293, 98 L. Ed. 2d 252 (1987)]." *State* v. *Vega,* 13 Conn. App. 438, 442–43, 537 A.2d 505 (1988).

We find that, under the facts of this case, the trial court's denial of the defendant's motion to suppress the arraignment identification was not erroneous. Since this identification was properly admitted, the identification of the defendant at trial was not tainted and was also admissible.

## II

The defendant's next claim is that the trial court's restriction of his cross-examination of the victim violated his constitutional rights of confrontation under the federal and state constitutions.[1]

---

[1] "Although the defendant relies on both the sixth amendment to the United States constitution and article first, § 8 of the Connecticut constitution, he offers no separate analysis of the Connecticut constitution as a basis for a disparate treatment between the two. We see no reason to undertake such an analysis. See *State* v. *Braxton,* 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985)." *State* v. *Cosby,* 6 Conn. App. 164, 166 n.1, 504 A.2d 1071 (1986).

It is undisputed that the day after the attack, the victim was unable positively to identify her assailant from a photographic array containing a ten year old black and white profile photograph of the defendant. This photographic array was an exhibit at trial. While cross-examining the victim, defense counsel asked whether she could then identify any of the photographs in the array as being of the defendant. The state's objection to the question as irrelevant was sustained by the trial court.

" 'The Confrontation Clause of the Sixth Amendment [to the United States constitution] guarantees the right of an accused in a criminal prosecution "to be confronted with witnesses against him. . . . '[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' " ' (Emphasis omitted.) *Delaware* v. *Van Arsdall,* 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). While ' " '[c]ross-examination is the principal means by which the believability of a witness and the truth [or reliability] of his testimony are tested[;] *Davis* v. *Alaska,* 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Brigandi,* 186 Conn. 521, 533, 442 A.2d 927 (1982)[;]' " ' *State* v. *Milum,* 197 Conn. 602, 608, 500 A.2d 555 (1985); a defendant's right to cross-examination 'is not absolute and is subject to reasonable limitation by the [trial] court.' *State* v. *Thompson,* 191 Conn. 146, 147–48, 463 A.2d 611 (1983); see also *State* v. *Jackson,* 198 Conn. 314, 318–19, 502 A.2d 865 (1986); *State* v. *Vitale,* [197 Conn. 396, 401, 497 A.2d 956 (1985)]. 'The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge. This discretion comes into play, however, only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. *State* v. *Castro,* 196 Conn. 421, 424, 493 A.2d 223 (1985); *State* v. *Gaynor,* 182 Conn.

501, 508, 435 A.2d 1022 (1980). The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which the jurors, as the sole triers of the facts and credibility, can appropriately draw inferences relating to the reliability of the witness. *United States* v. *Vasilios,* 598 F.2d 387, 389 (5th Cir. 1979), cert. denied, 444 U.S. 967, 100 S. Ct. 456, 62 L. Ed. 2d 380 (1979), reh. denied, 444 U.S. 1049, 100 S. Ct. 742, 62 L. Ed. 2d 737 (1980), and cert. denied sub nom. *Alexander* v. *United States,* 444 U.S. 932, 100 S. Ct. 277, 62 L. Ed. 2d 190 (1979); *State* v. *Castro,* supra, 425.' *State* v. *Vitale,* supra, 402; see also *State* v. *Weidenhof,* 205 Conn. 262, 270, 533 A.2d 545 (1987); *State* v. *Milum,* supra, 609; *State* v. *Shindell,* 195 Conn. 128, 140, 486 A.2d 637 (1985); *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985)." *State* v. *Milner,* 206 Conn. 512, 524–25, 539 A.2d 80 (1988).

A review of the defendant's cross-examination of the victim reveals that he had every opportunity to question her about the details of her original description of her assailant. This questioning exposed the jury to significant differences between the physical characteristics of the defendant and those of the assailant as reported by the victim, as well as inconsistencies in the victim's description of the assailant's clothing. The defense was able to cross-examine the victim extensively regarding the accuracy of the composite picture that she aided the police in producing, and her earlier inability to identify her assailant from the photographic array containing a photograph of the defendant. The defense also raised questions about whether the victim's identification of the defendant at the Torrington courthouse was unduly influenced by the suggestive setting. Although the defense counsel did not question the

victim about her in-court identification of the defendant, he was not prevented from doing so by the trial court.

We find that this examination provided the defendant with an opportunity to expose before the jury any facts upon which the jury could determine the victim's credibility sufficient to satisfy the confrontation clause of the sixth amendment.

" 'Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply "[e]very reasonable presumption . . . in favor of the correctness of the trial court's ruling in determining whether there has been an abuse of discretion." *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980).' *State* v. *Castro,* 196 Conn. 421, 426, 493 A.2d 223 (1985). ' " 'To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial.' *United States* v. *Elliott,* 571 F.2d 880, 909 (5th Cir. 1978); *Gordon* v. *United States,* 438 F.2d 858, 865 (5th Cir. 1971)." *State* v. *Gaynor,* [182 Conn. 501, 510, 438 A.2d 749 (1980)].' *State* v. *Castro,* supra, 426." *State* v. *Warren,* 14 Conn. App. 688, 698, 544 A.2d 209 (1988).

The court sustained the state's objection to the question posed to the witness on the ground that it was not relevant. "[T]he question in determining the relevancy on cross-examination is not 'whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness. . . .' " *State* v. *Delgado,* 8 Conn. App. 273, 286, 513 A.2d 701 (1986), quoting *State* v. *Denby,* 198 Conn. 23, 31–32, 501 A.2d 1206 (1985).

As set out in our discussion of the defendant's constitutional claim, the defense was allowed to cross-examine the victim extensively on matters relating to the reliability of her previous identifications. Inconsistencies in her description of the assailant, her inability to identify him when first presented with the photo array, and the possible influence of suggestive settings on her identifications of the defendant were all brought out on cross-examination. If the trial court had allowed the witness to answer the question posed, she might have been unable to identify the defendant's picture in the photo array. While this would have been yet another factor relevant to the credibility of the witness' testimony, we do not believe that the failure to allow the defendant to pursue this line of questioning clearly prejudiced the defendant's case.

We find that the trial court allowed sufficient latitude on cross-examination for the defendant to attempt to discredit the victim's testimony before the jury.

### III

Next, the defendant contends that the refusal of the trial court to give the requested charge on problems relating to eyewitness identification violated his constitutional rights to due process. Specifically the defendant claims that the trial court erred in not giving an instruction based on *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972). "Although such an instruction may be given in an appropriate case; see *State* v. *Harden,* 175 Conn. 315, 322, 398 A.2d 1169 (1978); it is not reversible error for a trial court to refuse to give a *Telfaire* instruction where the conviction of the defendant did not turn upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent. *State* v. *Davis,* 198 Conn. 680, 685, 504 A.2d 1372 (1986)." *State* v. *Elliott,* 8 Conn. App. 566, 573, 513 A.2d 1285, cert.

denied, 201 Conn. 813, 517 A.2d 630 (1986); see *State v. Hardison,* 16 Conn. App. 142, 146, 546 A.2d 968 (1988).

Although the conviction in this case turned in major part on the identifications of the defendant by the victim, both the identification at the arraignment and the identification at trial were clear, certain and consistent, and therefore the court was not required to give a *Telfaire*-type instruction. In addition, while the court's charge was not exactly as requested by the defendant, it in fact covered the substance of the written request and contained many of the elements covered by the model charge in *Telfaire.*

"It is not error for a trial court to refuse to charge a jury in the exact words of a requested instruction, as long as the requested charge is given in substance. See *State* v. *Harrell,* 199 Conn. 255, 269–70, 506 A.2d 1041 (1986); *State* v. *Falcone,* 191 Conn. 12, 26, 463 A.2d 558 (1983)." *State* v. *Jenkins,* 8 Conn. App. 35, 40, 510 A.2d 1370 (1986). The court instructed the jury to consider the victim's capacity and opportunity to observe her assailant, taking into consideration the time she had to observe him, her proximity to him, and whether she had known him prior to the attack. The jury was also instructed to consider the initial description the victim gave to the police and to scrutinize carefully the victim's identification of the defendant, in order to determine whether, in the jury's opinion, the identifications were products of the victim's own recollection or were unduly influenced by the manner in which the defendant was presented to her for identification.

We find that these instructions sufficiently apprised the jury of the appropriate standard for determining the credibility of the victim's eyewitness testimony.

## IV

In his final claims, the defendant asserts that the trial court erred in its instructions to the jury. Specifically, the defendant claims that the court made certain comments on the evidence which either directed the jury to find certain elements of the crimes with which he was charged or removed those elements from the jury's consideration. We disagree.

At the outset, we note that the defendant did not properly preserve these claims for appeal. Nonetheless, we will review these claims at this time because they implicate the defendant's " 'constitutional right to a jury trial and due process of law in light of the assertion that the court effectively directed the jury on some of the factual issues by virtue of its comments on the evidence . . . .' *State* v. *Collette,* 199 Conn. 308, 316 n.6, 507 A.2d 99 (1986)." *State* v. *Flynn,* 14 Conn. App. 10, 32, 539 A.2d 1005 (1988).

In reviewing a claim that the court improperly commented on the evidence, we first note that " ' "[i]t has been established by repeated decisions in this State that a court, in submitting a case to the jury, may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point of evidence in issue in the case, and may comment upon the weight of the evidence, so long as it does not direct or advise the jury how to decide the matter . . . ." *State* v. *Cabaudo,* 83 Conn. 160, 163, 76 A. 42 (1910).' *State* v. *Nims,* [8 Conn. App. 631, 640–41, 513 A.2d 1280, cert. denied, 201 Conn. 812, 516 A.2d 887 (1986)]. 'The ultimate test of the charge is whether, read in its entirety, it fairly presents the case to the jury so that no injustice is done . . . .' *State* v. *Storlazzi,* [191 Conn. 453, 466, 464 A.2d 829 (1983)]. 'Individual comments are not to be judged in isolation from the charge as a whole; *State*

v. *Moss,* 189 Conn. 364, 367, 456 A.2d 274 (1983); *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978); and should be examined not in a vacuum, but in the context of the factual issues raised at trial. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982).' *State* v. *Collette,* 199 Conn. 308, 316–17, 507 A.2d 99 (1986)." *State* v. *Flynn,* supra, 34.

In this case, the defendant first contends that the trial court directed a finding on certain of the identification testimony given by the victim. Specifically, the defendant contends that the court directed the jury to find that the defendant fit the description given by the victim of her assailant. We disagree.

In the course of its instructions, the court recounted the description the victim had given the police of her assailant. The court noted that the victim had told the police that the man who assaulted her had "short dark hair with a dark complexion and dark eyes, was five foot eight to five foot ten, weighed about 175 to 180 pounds, and talked slowly." After giving that description, the court commented that "I think it's fair to say that that general description would certainly fit the defendant." In finding that this statement was a permissible comment on the evidence and not a case of judicial factfinding, we first note that the statement was made in the midst of an explanation by the court that the victim's identification had to be carefully scrutinized. Immediately after making that statement the court went on to point out that the description given by the victim "omitted any mention of several prominent physical characteristics of the defendant . . . braces on the teeth, scars on the face, and tatoos on both arms." We further note that the trial court had instructed the jury that it was the sole and exclusive determiner of the facts of the case and that it was free to accept or reject any facts the judge used in illustrating legal principles. Reading the charge as a whole, we

conclude that the court's statement was a permissible comment on the evidence and not a case of judicial fact-finding.

The defendant next contends that the trial court erred in charging the jury that the procedure resulting in the Torrington arraignment identification was legal and proper. We disagree.

As we noted in part I, despite the fact that the procedure which resulted in the Torrington arraignment identification was unnecessarily suggestive, the resulting identification was nevertheless reliable. Accordingly, the trial court did not err in instructing the jury that there was nothing illegal or improper about the procedure. In reaching this conclusion, we further note that the trial court did not refer to the legality of the procedure in a way which usurped the jury's role in determining the reliability of the victim's identification of the defendant. The court instructed the jury "I want to emphasize that there wasn't anything illegal or improper about the procedure followed by the Thomaston police. But, if you believe that [the victim's] identification of the defendant was influenced by the circumstances on July 21st in the Torrington courthouse, and that her identification of the defendant is not entirely a product of her independent recollection then you should scrutinize her identification of the defendant with great care. You need not reject it on that count, but you should examine all the more carefully." We find that the court's instruction was proper and did not remove the question of the reliability from the jury.

The defendant's final claim is that the trial court erred in instructing the jury that if it believed the victim's entire testimony it must find the defendant guilty

on all counts.[2] The defendant claims that this instruction removed the element of intent from the jury's consideration. We disagree.

In addressing this claim, we first note that the court never told the jury that it must convict the defendant if it believed the victim's entire testimony. The trial court merely instructed the jury that if it believed the testimony of the victim, it could find that certain crimes were perpetrated upon her, or that it could infer that the perpetrator had the intent necessary to be convicted under the statute.

In giving these instructions, the trial court did not remove the issue of intent from the jury's consideration. The jury was specifically instructed that intent was an element of each of the crimes with which the defendant was charged. It was further instructed that in order to convict the defendant, it must find each and every element of the crimes charged beyond a reasonable doubt. Finally, the trial court gave a lengthy description to the jury of the manner in which intent could be inferred from the actions of an accused. Reading the charge as a whole, we conclude that the issue of intent was not removed from the jury's consideration.

There is no error.

In this opinion the other judges concurred.

---

[2] The defendant raises one additional claim of error. He claims that the trial court erred in instructing the jury that it could convict the defendant even if it believed his alibi. A review of the record, however, reveals that there was an error in the transcription of the proceedings. The trial court actually informed the jury that it could convict the defendant if it disbelieved his testimony. The instruction actually given was not erroneous, and the defendant does not take issue with it.