STATE OF CONNECTICUT *v.* WILLIAM EVANS
(12545)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, JS.

Argued April 9—decision released July 1, 1986

*Perry C. Buddington,* special public defender, with whom, on the brief, was *James L. Radda,* special public defender, for the appellant (defendant).

*Irving L. Aronson,* assistant state's attorney, with whom, on the brief, was *Richard A. Schatz,* former assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, William Evans, was charged in a substitute information with the crime of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4)[1] and with being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a).[2] A jury found the defendant guilty of both crimes. On appeal, the defendant claims that the trial court erred: (1) in permitting testimony at trial concerning a pretrial photographic identification and in refusing to suppress the pretrial identification as unnecessarily suggestive and unreliable; and (2) in denying the defendant's motion to dismiss the substitute information as violative of his equal protection rights under article first, § 20 of the Connecticut constitution. We find no error.

---

[1] General Statutes § 53a-134 (a) (4) provides: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

[2] General Statutes § 53a-40 (a) provides: "(a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes: (A) The crimes enumerated in subdivision (a), the crime of murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75

The record reveals that at approximately 2 p.m. on September 30, 1983, a robbery occurred at the courtesy booth at the Finast supermarket in the New London Shopping Center. The robber had a brown paper bag and demanded that the bag be filled with money. Pat Philburn, a store employee, placed $1950 into the bag. At trial she testified that the robber was a black male with no facial hair, approximately six feet tall, weighing two hundred pounds, about thirty-six years old, wearing a blue baseball cap with the letter "B" on it. Karen Neilon, another store employee, testified at trial that she saw the robber place a gun on the counter. She further testified that the robber was a black male, approximately six feet tall, medium to large frame, with no facial hair and a fairly dark complexion, in his thirties. Neither Philburn nor Neilon was able to identify the defendant as the robber at trial or when they viewed a photographic array containing a picture of him soon after the robbery.

The only other person who claimed to have viewed the robber was Old Lyme Constable Bernard Douton. On September 30, 1983, Douton, while in his patrol car, received a description, over his police radio, of an automobile allegedly involved in the robbery. It was described as a large yellow vehicle with a white top and reportedly was being operated by a black male with a purple shirt. At approximately 2:15 or 2:30 p.m. that day, Douton observed, on I-95, a large yellow automo-

---

or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2)."

bile being driven by a black male. Because the vehicle had a black, rather than a white top, however, he did not stop it immediately but pulled alongside it and observed the driver for thirty or thirty-five seconds during most of which time the driver was facing him. Douton then signalled the driver to pull over and the driver stopped his vehicle about ten feet ahead of Douton's patrol car. At that point the driver began to exit his vehicle and, while doing so, looked back toward Douton for about five seconds. Douton told the man to get back in the car, remain stationary, and place his hands on the dashboard. The driver instead re-entered his automobile and drove away. Douton pursued him in his patrol car and the driver eventually lost control of his vehicle and it struck a stone wall. The driver then ran from the vehicle and Douton continued the pursuit on foot. During the chase the suspect tripped and fell to the ground, then got up, looked at Douton for "less than five seconds," implored him not to shoot and started running again. Shortly thereafter, he stopped, turned to Douton and shouted, "Don't shoot. Don't shoot. I give up." This encounter consumed "less than five seconds" before the suspect turned away from Douton and ran through a backyard and over a stone wall. Douton at that point terminated the pursuit and returned to his vehicle. The closest Douton was to the suspect during the chase was ten or fifteen feet, but he had a clear field of vision during the entire pursuit. Douton was able to describe the suspect to the New London police department as a clean-shaven black male, approximately six feet tall, 35 to 40 years old, medium build, and wearing a purple shirt.

The day after the robbery, at New London police headquarters, Douton viewed an array of five or six black and white photographs of black males for approximately fifteen or twenty minutes. He did not identify any of the photographs in the array as that of the man

he had chased. One of the photographs, however, did in fact depict the defendant but with a full beard and a large bandage covering his forehead. Later that same day at Old Saybrook police headquarters Douton was shown a single color photograph of the defendant taken by the Old Saybrook police. He positively identified the man portrayed in that photograph as the man he had chased the previous day.

The defendant's first claim is that the trial court erred in permitting testimony at trial of the pretrial photographic identification and in refusing to suppress the identification as unnecessarily suggestive and unreliable. The defendant asserts that the identification procedure used by the police violated his due process rights. "A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure." *State* v. *Fullwood,* 193 Conn. 238, 244, 476 A.2d 550 (1984). This court has consistently maintained that " '[i]n determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on the "totality of the circumstances." ' *State* v. *Hinton,* 196 Conn. 289, 292–93, 493 A.2d 836 (1985); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985); *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980)." *State* v. *Davis,* 198 Conn. 680, 682, 504 A.2d 1372 (1986).

Although we have recognized that pictorial recurrence can be suggestive because it increases the risk of misidentification; *State* v. *McKnight,* 191 Conn. 564, 572, 469 A.2d 397 (1983); *State* v. *Ledbetter,* 185 Conn. 607, 613, 441 A.2d 595 (1981); we find that Douton's

earlier viewing, in the array, of a photograph of the defendant, which he did not identify, did not make the identification procedure unnecessarily suggestive.[3] Where a witness views a photograph of a defendant which does not resemble the defendant but later identifies the defendant based on a different photograph, viewing of the earlier photograph does not taint the latter photographic identification. *United States* v. *Brown,* 461 F.2d 134, 144 (D.C. Cir. 1972). The first photograph of the defendant shown to Douton was markedly different from the second photograph. In the first photograph, the defendant had a full beard, and a large bandage covered most of his forehead. In the second photograph, the defendant was depicted with only a moustache. Douton testified that, when he identified the second photograph as that of the man he had chased, he did not recognize it as depicting an individual of whom he had seen a photograph earlier that day in the photographic array.

Although the earlier viewing of a different photograph of the defendant did not result in an unnecessarily suggestive identification procedure, we nevertheless find that the viewing of the single color photograph of the defendant was itself unnecessarily suggestive. The danger of misidentification of a suspect by a witness is increased where the photograph of an individual is in some way emphasized. *Simmons* v. *United States,* 390 U.S. 377, 383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Gold,* 180 Conn. 619, 655, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Hafner,* 168 Conn. 230, 238, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975). Showing a witness a single photograph rather than an array of

[3] We find that a discussion of pictorial recurrence is appropriate. Although this point was not specifically raised in the defendant's brief, it was raised in oral argument.

photographs obviously emphasizes that photograph. Additionally, this single photograph was further emphasized because it was the only color photograph shown Douton. Any one-to-one type confrontation between a witness or victim and a person whom the police present to him as a suspect must necessarily convey the message that the police have reason to believe that person guilty. *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976). We conclude that in the present case the pretrial identification procedure was unnecessarily suggestive because it consisted of a showing of only a single color photograph rather than an array of photographs.

Even though we find that showing the witness a single color photograph was unnecessarily suggestive, "[o]ne-man confrontations do not per se constitute a denial of due process of law. . . . A determination as to whether there has been a violation of due process rights in an identification procedure ' "depends on the totality of the circumstances surrounding it." *Stovall* v. *Denno,* 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 [1967].' *State* v. *Hafner,* 168 Conn. 230, 235, 362 A.2d 925 [1975] and cases cited therein." (Citations omitted.) *State* v. *Middleton,* supra, 606–607.

We conclude that, despite the unnecessarily suggestive pretrial identification procedure, the witness' identification of the defendant was nevertheless reliable based on the totality of the circumstances. " 'The constitutional test for reliability requires the trial court to consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Theriault,* 182 Conn.

336, 371–72, 438 A.2d 432 (1980).' *State* v. *Hinton,* supra, 295–96." *State* v. *Davis,* supra, 683–84.

The identification was made the day following the robbery. On the day of the robbery, Douton had four separate opportunities to view the defendant. He observed the defendant's face for twenty to thirty seconds as he drove alongside of his automobile on I-95 subsequent to the robbery. He again saw the defendant's face when he stopped the defendant's automobile on I-95. He further viewed the defendant's face on two occasions when he chased the defendant on foot. He testified that on each of those occasions he had a clear view of the defendant's face and sufficient time to observe it. Based on his observations, Douton was able to give the police an accurate description of the defendant. When he identified the photograph of the defendant as that of the person he had chased, he was extremely certain of his identification. The totality of the circumstances indicates, therefore, that the identification was reliable even though the identification procedure was unnecessarily suggestive. The trial court did not err in permitting testimony of the pretrial identification or in not suppressing that identification.

The defendant's second claim is that the trial court erred in denying the defendant's motion to dismiss the substitute information because the defendant's prosecution for robbery in the first degree violated his right to equal protection under the state constitution. The defendant was convicted of the class B felony of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) which provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm

. . . . " The defendant asserts that, given the evidence presented in the state's case-in-chief, the defendant "just as easily" could have been charged with the class C felony of robbery in the second degree in violation of General Statutes § 53a-135 (a) (2) which states: "A person is guilty of robbery in the second degree when he commits robbery and . . . in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument." The defendant argues that in the present case there is no rational basis for charging him with robbery in the first degree rather than with robbery in the second degree. He maintains, therefore, that charging him with robbery in the first degree constitutes selective and discriminatory prosecution in violation of his equal protection rights under article first, § 20 of the Connecticut constitution.[4]

We have recognized that "[t]he equal protection clauses of both the United States and Connecticut constitutions having a like meaning, the decisions of the United States Supreme Court defining federal constitutional rights are, at the least, persuasive authority, although we fully recognize the primary independent vitality of the provisions of our own constitution." *Horton* v. *Meskill,* 172 Conn. 615, 641, 376 A.2d 359 (1977).

In *United States* v. *Batchelder,* 442 U.S. 114, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979), a claim similar to the defendant's was expressly addressed under the federal equal protection clause. The United States Supreme Court rejected the view that the defendant

---

[4] The defendant has made no claim of prosecutorial abuse of discretion or prosecutorial vindictiveness.

is now arguing. The court held that there was no equal protection violation even where the statutes prohibit exactly the same conduct. *United States* v. *Batchelder,* supra, 126. That court reasoned that "[it] had long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. . . ." Id., 124–25. "The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. . . . Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced." (Citations omitted.) Id., 126.

If we were to adopt the rationale of the United States Supreme Court as expressed in *Batchelder,* there would be no equal protection violation even if we were to find that the statutes in question prohibit exactly the same conduct. Upon examination of General Statutes §§ 53a-134 (a) (4) and 53a-135 (a) (2), however, we find that there is a significant difference between the two statutes. This court has said previously that "[i]t is clear that the essential difference between §§ 53a-134 (a) (4) and 53a-135 (a) (2) is the type of weapon used. The former is limited to firearms; the latter includes firearms but is not limited to them." *State* v. *Kolinsky,* 182 Conn. 533, 543, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 86 L. Ed. 2d 354 (1981). See *State* v. *Hawthorne,* 175 Conn. 569, 573, 402 A.2d 759 (1978). This difference indicates a clear legislative intent to impose a greater penal sanction where robbery is committed with the representation of the use of a firearm. Because the statutes do not prohibit exactly the same conduct there is no reasonable basis

for a finding that the equal protection clause of the Connecticut constitution, article first, § 20 has been violated. We need not therefore address whether Connecticut will adopt the same reasoning as that of the United States Supreme Court in *Batchelder*. The trial court was correct in denying the defendant's motion to dismiss the substitute information.

There is no error.

In this opinion the other justices concurred.