## WILLIAM T. EVANS *v.* COMMISSIONER OF CORRECTION (12887)

LAVERY, HEIMAN and SCHALLER, Js.

Argued January 11—decision released May 2, 1995

*Paula Mangini Montonye,* assistant public defender, for the appellant (petitioner).

*Lawrence J. Tytla,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee (respondent).

HEIMAN, J. The petitioner appeals from the judgment of the habeas court dismissing his habeas corpus petition. On appeal, the petitioner claims that (1) certain factual findings of the habeas court were unsupported by the evidence presented at the habeas hearing, (2) the findings of the habeas court that the petitioner was not prejudiced by the actions of counsel were unsupported by the evidence, and (3) the habeas court improperly declined to review the petitioner's claim that his conviction was rendered in violation of due process. We affirm the judgment of the habeas court.

The following brief history of the case is necessary for a resolution of this appeal.[1] On September 30, 1983, a man approached the courtesy booth of the Finast supermarket in New London. He displayed a gun and demanded that a brown paper bag be filled with money. After receiving $1950 in $1 bills, the robber fled from the scene in a two-tone yellow car. Store employees provided police with a description of the robber's physical features and clothing.

Constable Bernard Douton of the Old Lyme police department was patrolling the area near the Finast store at the time of the robbery. He received a descrip-

---

[1] The underlying facts of the petitioner's conviction are set forth more fully in *State* v. *Evans,* 200 Conn. 350, 511 A.2d 1006 (1986).

tion over the police radio of the suspect and the car in which the suspect had fled the scene. Upon sighting a car and driver meeting the description, Douton signaled for the driver to pull over. The driver refused and Douton pursued the driver until the driver lost control of his vehicle and hit a stone wall. The driver then exited the vehicle and fled on foot, eluding Douton.

A search of the car abandoned by the suspect revealed that the car was owned by the petitioner's uncle and had been reported stolen from Philadelphia. The petitioner's fingerprints were found on a sales receipt and a Bradlees bag found in the car and his palm print was identified on the counter of the courtesy booth in the store that had been robbed.

The petitioner was thereafter arrested and charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and with being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a). He was convicted after separate jury trials on each count and sentenced to twenty-five years imprisonment. The petitioner's conviction was upheld by our Supreme Court in *State* v. *Evans*, 200 Conn. 350, 511 A.2d 1006 (1986).[2]

On February 10, 1993, the petitioner filed a petition for a writ of habeas corpus[3] claiming that his conviction and resultant imprisonment were obtained in violation of his constitutional rights to due process and effective assistance of counsel.[4] After trial, the habeas court dismissed the petition for a writ of habeas corpus and this appeal followed.

[2] The petitioner's direct appeal concerned claims that a pretrial identification was unnecessarily suggestive and unreliable and that the denial of his motion to dismiss a substitute information was violative of his constitutional right to equal protection.

[3] This amended petition was filed on remand from this court, *Evans* v. *Warden*, 29 Conn. App. 274, 613 A.2d 327 (1992).

[4] The petitioner's writ of habeas corpus contained three counts. In count one of his petition, the petitioner claimed that his right to due process was

## I

The petitioner first claims that the habeas court's dismissal of his petition was based on findings of fact that were not supported by the evidence. Specifically, the petitioner claims that the habeas court's finding that the sales receipt, which was introduced as evidence at the criminal trial, had been attached to the bag that

violated in that (1) the same judge who had signed the warrant for the petitioner's arrest heard the petitioner's motion to suppress a pretrial identification, (2) a state's witness was permitted to comment on the petitioner's exercise of his right to remain silent during police interrogation, (3) the trial court instructed the jury that it could infer that the petitioner intended the natural consequences of his actions, (4) the trial court improperly instructed the jury on the definition of a "pistol," (5) the trial court failed to repeat an instruction to the jury when considering the charge of being a persistent dangerous felony offender, and (6) the prosecutor allowed false and misleading evidence to be presented to the trial court.

In count two of his amended petition, the petitioner alleged ineffective assistance of trial counsel because such counsel did not properly object to or preserve the above improprieties, and in addition, (1) failed to investigate adequately the petitioner's defense by conducting independent tests on a sales slip that established that the petitioner was in Connecticut on the date of the robbery, (2) failed to request a limiting instruction to the jury on the purpose of the sales receipt, and (3) established that the petitioner had been previously arrested.

In count three of his amended petition, the petitioner alleged ineffective assistance of appellate counsel in failing to raise on appeal (1) the impropriety of the same judge's hearing the motion to dismiss, (2) the omission of a limiting instruction on the purpose of the admission of the sales receipt, (3) the fact that a state's witness was allowed to testify that the petitioner chose to remain silent until he could speak with an attorney, (4) the improper instruction on the definition of a pistol, (5) the improper instruction that the jury could infer that the petitioner intended the natural and probable consequences of his actions, and (6) the failure of the trial court to repeat an instruction during the trial on the charge of being a persistent serious felony offender.

The petitioner also claimed that his rights were violated by the fact that the prosecutor was allowed to file a substitute information after the commencement of the case without a showing of good cause, that trial counsel did not object to or preserve this impropriety, and appellate counsel did not raise the issue on appeal. This claim was withdrawn at the time of trial before the habeas court.

contained the stolen money is in direct contradiction to the evidence presented at the habeas hearing.[5] We do not agree that the habeas court's finding of fact was clearly erroneous.

The following facts are necessary for the resolution of this issue. At the criminal trial, the state introduced into evidence a sales slip from a Bradlees store in East Haven. Testimony at trial established that the sales slip and the brown Bradlees bag to which it was attached had been found in the vehicle chased by Douton and abandoned by the suspect. No testimony was introduced regarding the contents of that bag. Fingerprint analysis by the Federal Bureau of Investigation revealed that the petitioner's fingerprints were on the sales slip.

At the hearing on the petitioner's habeas petition, various witnesses testified that the sales receipt bearing the petitioner's fingerprints was attached to the bag in which the stolen money was found. During closing argument, counsel for the respondent contended that the significance of the sales slip rested not on the date that it was issued, but on the fact that it was attached to the bag that contained the stolen money. The petitioner did not refute this contention before the habeas court.

In its memorandum of decision, the habeas court repeatedly referred to the sales slip bearing the petitioner's fingerprint as having been attached to the bag in which the stolen money was found. The petitioner now claims that this factual finding is in direct contradiction of the evidence.[6]

---

[5] The transcript of the criminal trial was introduced as evidence at the petitioner's habeas hearing.

[6] In the petitioner's brief, counsel articulates her doubt that the habeas judge reviewed the suppression and trial transcripts as claimed in the memorandum of decision. When questioned at oral argument about this statement, counsel stated that she did not intend to cast aspersions on the

In order to evaluate the petitioner's claim, "[w]e first consider our scope of review. In a habeas corpus appeal, this court may not disturb underlying historical facts found by the habeas court unless they are clearly erroneous. *Veal* v. *Warden*, 28 Conn. App. 425, 428, 611 A.2d 911, cert. denied, 224 Conn. 902, 615 A.2d 1046 (1992); *Biggs* v. *Warden*, 26 Conn. App. 52, 56, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991). [W]e are called upon to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Our function is not to examine the record to see if the trier of fact could have reached a contrary conclusion. . . . *Siano* v. *Warden*, 31 Conn. App. 94, 95, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993). *McKnight* v. *Commissioner of Correction*, 35 Conn. App. 762, 765, 646 A.2d 305, cert. denied, 231 Conn. 936, 650 A.2d 173 (1994)." (Internal quotation marks omitted.) *Ranciato* v. *Nelson*, 36 Conn. App. 678, 679–80, 654 A.2d 358 (1995); see also *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991).

Upon review of the transcript of the habeas proceedings and of the whole record, we cannot say that the habeas court's finding that the sales slip was attached to the bag that contained the money was clearly erroneous. Contrary to the petitioner's assertions, no evi-

integrity of the habeas court. We draw to the attention of the bar the following Rules of Professional Conduct:

Rule 8.2 (a) provides in relevant part: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ."

Rule 8.4 provides in relevant part: "It is professional misconduct for a lawyer to . . . (d) [e]ngage in conduct that is prejudicial to the administration of justice . . . ."

We caution counsel against making statements not intended to question the court's integrity but that might be construed in that manner.

dence was submitted at his criminal trial as to the contents of the Bradlees bag to which the sales slip was attached. Store employees testified that the robber presented a brown paper bag and requested that the bag be filled with money. The Bradlees bag introduced into evidence was also brown. No testimony established whether the bag requested to be filled and the Bradlees bag were one and the same. Without evidence to the contrary, we cannot say that the findings of the habeas court that the sales slip bearing the petitioner's fingerprints was attached to the bag containing the stolen money was clearly erroneous.

## II

The petitioner next claims that the habeas court's legal conclusions that he was not denied effective assistance of trial and appellate counsel were not supported by the evidence presented at the habeas hearing. The petitioner asserts that the habeas court improperly determined that he was not prejudiced by (1) trial counsel's failure to conduct independent tests to determine the date on the Bradlees sales slip, (2) the actions of his trial and appellate counsel in failing to challenge the fact that the same judge who had signed the warrant for his arrest had also presided over the hearing on his motion to suppress, (3) trial counsel's failure to inform the jury of an alleged discrepancy in a witness' testimony, (4) trial counsel's failure to object to, and appellate counsel's failure to raise on appeal, the trial court's failure to reinstruct the jury not to draw an adverse inference from his refusal to testify, (5) the failure of his trial and appellate counsel to challenge a witness' comment regarding his postarrest silence, (6) the failure of his trial and appellate counsel to challenge the trial court's improper instruction on the definition of a "pistol," and (7) the failure of his trial and appellate counsel to challenge the trial court's instruction

on intent. We agree with the findings of the habeas court that the petitioner was not prejudiced by the conduct of his trial and appellate counsel.

We first set forth the legal authority necessary for the review of the petitioner's claims and then address each claim seriatim. "Although the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of . . . the petitioner's constitutional right to effective assistance of counsel is subject to plenary review by this court, unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 700, 652 A.2d 1050 (1995); see also *Phillips* v. *Warden*, supra, 220 Conn. 131.

" 'Our Supreme Court has adopted the two-pronged analysis of *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984)], to determine if counsel's assistance was ineffective. . . . Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. . . .' " (Citations omitted.) *Johnson* v. *Commissioner of Correction*, supra, 36 Conn. App. 701, citing *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 455, 610 A.2d 598 (1992); *Sekou* v. *Warden*, 216 Conn. 678, 690, 583 A.2d 1277 (1990). "A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." *Nardini* v. *Manson*, 207 Conn. 118, 124, 540 A.2d 69 (1988); see also *Bethea* v. *Commissioner of Correction*, 36 Conn. App. 641, 644, 652 A.2d 1044 (1995).

In order to establish prejudice by the actions of trial or appellate counsel, the burden is on the petitioner to show that their errors have burdened him with an unreliable conviction. *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 445–46; see also *Johnson* v. *Commissioner of Correction*, supra, 36 Conn. App. 702. Habeas relief will be granted on a claim of ineffective assistance of counsel only if "the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 702; see also *Commissioner of Correction* v. *Rodriquez*, 222 Conn. 469, 477, 610 A.2d 631 (1992). It is not enough for the petitioner to demonstrate an impropriety that might entitle him to relief on appeal. *D'Amico* v. *Manson*, 193 Conn. 144, 156–57, 476 A.2d 543 (1984); *Jeffrey* v. *Commissioner of Correction*, 36 Conn. App. 216, 218, 650 A.2d 602 (1994).

Applying the foregoing standards, we review each of the habeas court's findings that the petitioner was not prejudiced by the actions of either trial or appellate counsel in terms of whether the conduct of counsel resulted in a trial with an unreliable result.

A

The petitioner claims that the habeas court incorrectly determined that he was not prejudiced by trial counsel's failure to conduct independent tests on the sales slip to determine its date. We disagree.

The following additional facts are necessary for the resolution of this claim. During the petitioner's criminal trial, the state introduced into evidence the sales slip found attached to the Bradlees bag located in the car abandoned by the suspect who had been chased by Douton. The officer who seized this evidence from the

car testified that the sales receipt bore the date of the robbery, September 30, 1983. The officer further testified that he made a notation of that date on his official police report at the time that the evidence was seized. The evidence remained in the possession of the New London police department until it was forwarded to the Federal Bureau of Investigation for latent fingerprint analysis. Due to the testing procedures used by the Federal Bureau of Investigation, the printing on the sales slip was obliterated and the date on the slip was illegible at the time of trial. Counsel for the petitioner did not conduct independent tests on the illegible sales slip to establish whether the officer was correct about the date.

At the habeas hearing, the petitioner testified that he informed counsel during his criminal trial that he was not in Connecticut on the date of the robbery and that the date on the sales slip was September 26 or 27. He claimed that he told counsel that on the date of the robbery he was in New York with friends. The petitioner's counsel testified, however, that the petitioner did not inform him of the possible discrepancy in the date of the sales receipt until after the trial and that the petitioner's alibi could not be corroborated.[7] Counsel further testified that it was a tactical decision to argue to the jury that the slip was illegible rather than to test it to establish a specific date in light of the fact that he believed the evidence as to the date to be insignificant in the context of the other evidence presented at trial.

Kenneth Zercie of the police forensic laboratory testified that independent tests conducted at the request of the petitioner's habeas counsel revealed with a "high degree of probability" that the date on the sales slip

---

[7] The petitioner was unable to provide the names of anyone who could corroborate his presence in New York on the date of the robbery. He also claimed to have used an assumed name at the hotel in New York.

was "9/2?/83 rather than 9/30/83," the date of the robbery. Zercie testified that the technology used to reveal this date was available at the time of the petitioner's criminal trial.

The habeas court found that trial counsel's failure to conduct tests to establish that the date on the slip was not the date of the robbery failed the second prong of *Strickland* v. *Washington*, supra, 466 U.S. 687, in that the result of the petitioner's trial would not have been different had the tests been conducted. We agree.

The habeas court's determination that the petitioner was not prejudiced by his counsel's failure to conduct an independent investigation of the date of the sales slip is amply supported by the record. Even had the petitioner's counsel established at trial that the date on the sales receipt was some days prior to the robbery, the remaining evidence was sufficiently conclusive as to cast no doubt on the reliability of the petitioner's conviction. The petitioner's palm prints were identified on the counter of the courtesy booth in the store that was robbed. His physical characteristics and clothing met the description of the robber given by store employees. In addition, his fingerprints were found in the car that met the description of the one in which the robber left and that was located by Douton within a short time after the robbery and within a short distance from the scene of the crime. In light of this evidence, the petitioner has not met his burden of proving that the outcome of the trial would have been different had independent testing been conducted on the sales receipt.

## B

The petitioner claims that the habeas court incorrectly determined that he was not prejudiced by the actions of his trial and appellate counsel in failing to challenge as improper that the same judge who signed

the warrant for his arrest presided over the hearing on his motion to suppress.

The following facts are necessary for a resolution of this claim. After Douton chased the suspect and was unable to apprehend him, Douton was shown an array of photographs that included a photograph of the petitioner. Douton was unable to identify the petitioner from this array. The day after the robbery, Douton was shown a single photograph of the petitioner and identified him as the suspect he chased.

On October 1, 1983, Officer William Gavitt of the New London police department prepared a warrant application for the petitioner's arrest. In the affidavit, Gavitt set forth the facts of the crime, the descriptions given of the robber by various store employees, and Douton's description of the suspect and his identification of the petitioner. In addition, the affidavit established that the vehicle abandoned by the suspect was registered to the petitioner's uncle and that contact with the petitioner's uncle established that the uncle suspected the petitioner of stealing his car. On the basis of that information, Judge Seymour Hendel signed the arrest warrant application.

On April 26, 1984, trial counsel moved to have Douton's identification suppressed as unnecessarily suggestive. Judge Hendel presided over the hearing on this motion. The petitioner's trial counsel did not request Judge Hendel's recusal, nor did his appellate counsel raise the issue on appeal. The habeas court found that the petitioner was not prejudiced by the actions of either counsel.

The petitioner relies on General Statutes § 51-183h,[8] Practice Book § 996,[9] and Canon 3C of the Code of Judi-

---

[8] General Statutes § 51-183h provides: "No judge may preside at the hearing of any motion attacking the validity or sufficiency of any bench warrant of arrest which he has signed."

[9] Practice Book § 996 provides in pertinent part: "A judicial authority may not preside at the hearing of any motion attacking the validity or suffi-

cial Conduct[10] in support of his claim that Judge Hendel should not have presided over the hearing on the motion to suppress. The petitioner failed, however, to provide us or the habeas court with any case law supporting his contention that a hearing on a motion to suppress an identification contained in an arrest warrant is equivalent to a motion attacking a warrant's validity or sufficiency. Contrary to the petitioner's assertions, Douton's single photo identification of the petitioner was not the central piece of evidence identified in the warrant affidavit. Rather, it was one piece of evidence supported by parallels in the descriptions of the robber by store employees and the physical characteristics of the petitioner, Douton's descriptions of the suspect chased in the yellow car, and the fact that the yellow car was owned by the petitioner's uncle and was suspected of having been stolen by the petitioner. Whether Douton's single photo identification of the petitioner should have been suppressed was a question entirely different from a question of whether the warrant affidavit set forth sufficient facts to establish probable cause for the petitioner's arrest.

The petitioner has, therefore, failed to meet his burden of proving that he was prejudiced in any way by the actions of counsel.[11]

## C

The petitioner claims that the habeas court incorrectly determined that the petitioner was not prejudiced by the fact that trial counsel failed to inform the jury

ciency of any warrant issued by him nor may he sit in appellate review of a judgment or order originally rendered by him."

[10] Canon 3C of the Code of Judicial Conduct provides in pertinent part: "(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

[11] We note also that our Supreme Court upheld Judge Hendel's decision that Douton's single photograph identification of the petitioner was reliable regardless of any suggestion. *State* v. *Evans*, supra, 200 Conn. 350.

of an alleged discrepancy in a witness' testimony. Specifically, the petitioner claims that Douton's testimony at the hearing on the petitioner's motion to suppress that the suspect he chased was wearing a purple shirt could not have been true in light of the fact that at the time that Douton was chasing the suspect, fellow officers were retrieving a purple shirt from the roadside near the scene of the crime.

The following facts are necessary for a resolution of this issue. The description of the robber given by the Finast employees included information that the robber was wearing a purple shirt. At the suppression hearing, Douton testified that the shirt worn by the suspect he was chasing was "purple" and "dark colored." At trial, Douton again described the shirt worn by the suspect as "dark colored."[12] He testified further that there were various articles of clothing scattered about the car that had been abandoned by the suspect. Detective Donald McCarthy of the Waterford police department then testified that he retrieved a purple shirt from a roadway close to the site of the robbery.

The petitioner contends that trial counsel was ineffective in not establishing that Douton could not have been chasing a person with a purple shirt if a purple shirt was found by the Waterford police at the same time as Douton was conducting his chase. We do not agree that the testimony presented at the criminal trial was necessarily contradictory or that trial counsel should

---

[12] In his brief, the petitioner seems to intimate that the state's attorney and Douton somehow conspired to present false evidence to the jury. The petitioner claims that the state's attorney elicited from Douton at the suppression hearing that the shirt worn by the suspect was "purple" and that this testimony was changed at the criminal trial to a description of the shirt as "dark colored." Our review of the transcripts of both the hearing on the motion to suppress as well as the criminal trial reveal that Douton's testimony at each was consistent. Douton testified alternately that the shirt was "purple" and that it was "dark colored." These descriptions are not contradictory.

have cross-examined as to the alleged inconsistency. Various items of clothing were found in the car abandoned by the suspect and there could well have been more than one "purple" or "dark colored" shirt. In light of the other evidence presented at trial, the habeas court correctly concluded that any possible inconsistency in the description of the clothing worn by the suspect chased by Douton would not have altered the outcome of the petitioner's criminal trial.

## D

The petitioner claims that the habeas court incorrectly determined that he was not prejudiced by his trial and appellate counsel's failures to challenge the trial court's failure to reinstruct the jury that it should not draw an adverse inference from the petitioner's choice not to testify.

The following facts are necessary for the resolution of this claim. Both charges against the petitioner were tried to the jury; the petitioner did not testify at either trial. On Friday, May 11, 1984, final arguments were presented and the jury was instructed on the law to be applied to the petitioner's case on the charge of robbery in the first degree. Among the various charges to the jury, the trial court instructed the jury in compliance with General Statutes § 54-84 (b)[13] that it should not draw any unfavorable inference from the fact that the petitioner had chosen to exercise his right not to testify. The jury returned a verdict of guilty on the count of robbery in the first degree that afternoon.

On Monday, May 14, 1984, the charge of being a persistent dangerous felony offender was presented to the same jury. The evidence presented by the state consisted of the testimony of Officer Robert Bosworth, a

---

[13] General Statutes § 54-84 (b) provides in relevant part: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. . . ."

records clerk at the community correctional center at Montville. Bosworth testified that the records of the center established that the petitioner had been previously convicted and incarcerated on a charge of robbery in the first degree.

In instructing the jury on the persistent dangerous felony offender charge, the trial court stated: "In considering the evidence presented by the state on this charge, you should recall the instructions which I gave on Friday, insofar as they are applicable to this particular matter, including particularly the instructions which I gave you concerning the presumption of innocence and proof beyond a reasonable doubt." The trial court did not otherwise repeat its instruction not to draw any adverse inference from the petitioner's decision not to testify. The petitioner's trial counsel did not object to the trial court's failure to so charge and appellate counsel did not raise the issue on appeal.

The petitioner has failed to show how the failure of trial counsel to except to the trial court's instruction or the failure of appellate counsel to appeal the issue prejudiced him in any way.[14] The petitioner has given us no reason to believe that the jury was misled to believe that the petitioner's failure to testify on the

---

[14] The petitioner cites *State* v. *Burke*, 182 Conn. 330, 438 A.2d 93 (1980), as support for the contention that it is reversible error for a trial court to omit the instruction to a jury to draw no adverse inference from a criminal defendant's failure to testify. Although *Burke* may stand for the proposition that the failure to give such an instruction will warrant reversal on direct appeal, such is not the standard when considering an application for a writ of habeas corpus. As we have stated, in order for the petitioner to prevail on his claim of ineffective assistance of trial and appellate counsel, he bears the burden of proving that their improprieties prejudiced him in such a way that the result of his criminal trial is unreliable, not that he may have been successful on direct appeal. See *Bunkley* v. *Commissioner of Correction*, supra, 222 Conn. 445. The petitioner has not demonstrated any way in which the failure of the trial court to repeat the instruction against drawing adverse inferences adversely affected his criminal trial on the charge of being a persistent dangerous felony offender.

charge of being a persistent dangerous felony offender could be considered to reflect adversely on his innocence. The trial court correctly instructed the jury on the charge of robbery in the first degree that no adverse inference could be drawn from the petitioner's decision to remain silent and not testify in his own behalf. Two days later, the same jury was instructed on the charge of being a persistent dangerous felony offender to recall the instructions given on the first charge. The trial court thereby incorporated by reference the charge not to draw any adverse inferences from the petitioner's failure to testify into its later instructions. It is unlikely that counsel's failures to raise the issue of the trial court's failure to give such an instruction affected the result of the trial in any way.

E

The petitioner claims that the habeas court incorrectly determined that he was not prejudiced by the failure of his trial and appellate counsel to challenge a witness' comment regarding his postarrest silence in violation of his rights under *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).[15]

At trial, Detective Gerard Gaynor testified that the petitioner was arrested in early January, 1984. Gaynor stated that he brought the petitioner to an interrogation room and read him his constitutional rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). After answering some preliminary questions in which the petitioner claimed to be in New York on the date of the robbery,

---

[15] "*Doyle* v. *Ohio*, supra, 426 U.S. 610, established the principle that after *Miranda* warnings are given the state may not use the silence of a defendant . . . to impeach the defendant's testimony . . . or to indicate a consciousness of guilt." (Citation omitted.) *Johnson* v. *Commissioner of Correction*, 34 Conn. App. 153, 160–61, 640 A.2d 1007, cert. denied, 229 Conn. 919, 644 A.2d 914 (1994).

the petitioner exercised his right to remain silent until he could consult with an attorney.[16]

In its memorandum of decision, the habeas court stated that the petitioner's *Doyle* claim was combined in his posttrial brief with the claim that the trial court should have reiterated the charge to the jury to draw no adverse inference from the petitioner's exercise of his choice not to testify. The habeas court did not, therefore, separately address the petitioner's *Doyle* claim.

The petitioner did not file a motion for articulation requesting the habeas court to address this claim. As a result, there is no record before us of the habeas court's reasoning on this issue. "In accordance with Practice Book § 4059, the petitioner has a duty to provide this court with a record for review. . . . The [petitioner's failure to comply] with this section renders the record inadequate and] . . . the petitioner's claim must fail." (Citations omitted; internal quotation marks omitted.) *Rouillard* v. *Commissioner of Correction*, 35 Conn. App. 754, 758, 646 A.2d 948, cert. denied, 231 Conn. 945, 653 A.2d 827 (1994).

F

The petitioner claims that the habeas court improperly determined that he was not prejudiced by his trial and appellate counsel's failures to challenge the trial court's improper instruction on the definition of a "pistol."

The following facts are necessary for the resolution of this claim. At the petitioner's criminal trial, the jury was instructed that the petitioner was charged with robbery in the first degree under General Statutes § 53a-134 (a) (4).[17] The statutory definition was then

[16] The petitioner erroneously asserts that his trial counsel elicited this information from Gaynor during cross-examination. Our review of the transcripts of the criminal trial establish that this information was given by Gaynor in response to questioning on direct examination by the state.

[17] General Statutes § 53a-134 (a) (4) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the com-

read to the jury. The trial court later defined the term "pistol" as "a handgun normally held and fired with one hand."[18]

The petitioner has again failed to show that his criminal trial was prejudiced by the failure of his trial counsel to object to the trial court's definition of a "pistol" or by his appellate counsel's failure to raise the issue on appeal. The robbery statute under which the petitioner was charged allows a conviction when a criminal defendant has used or has threatened to use "what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." General Statutes § 53a-134 (a) (4). Whether the gun displayed by the petitioner was a "pistol" or "other firearm" would not affect his conviction. Any erroneous definition of "pistol" was not, therefore, prejudicial.

G

The petitioner claims that the habeas court improperly found that he was not prejudiced by the trial court's instruction to the jury concerning intent. Trial counsel did not take exception to this instruction, and appellate counsel did not raise the issue on appeal. The petitioner claims that the instruction violates the rule of *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2540, 61 L. Ed. 2d 39 (1979).

The following facts are necessary to a resolution of this claim. While instructing the jury on the charge of robbery in the first degree, the trial court stated: "In accordance with common experience, and observations in determining the intent of any person, you may but you are not required to infer that [the petitioner]

mission of the crime . . . he . . . displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[18] General Statutes § 53a-3 (18) defines a pistol as "any firearm having a barrel less than twelve inches . . . ."

intended the natural and probable consequences which ordinarily follow his voluntary action." The petitioner's trial counsel took no exception to this charge, nor did his appellate counsel raise the issue on appeal.

We cannot say that the petitioner was prejudiced by the conduct of either counsel. "In *Sandstrom* v. *Montana*, [supra, 442 U.S. 517–24], the United States Supreme Court held that a jury instruction that the law presumes that a person intends the ordinary consequences of his voluntary acts violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as a conclusive or burden-shifting presumption and thus relieved the state of its burden of proving every element of the crime. . . . We have, however, recognized that the rule of *Sandstrom* must not be oversimplified. . . . *Sandstrom* does not invalidate, for example, the use of an entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant. . . . A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." (Citations omitted; internal quotation marks omitted.) *State* v. *Turmon*, 34 Conn. App. 191, 199–200, 641 A.2d 138, cert. denied, 229 Conn. 922, 642 A.2d 1216 (1994); see also *State* v. *Cooper*, 227 Conn. 417, 443, 630 A.2d 1043 (1993).

The trial court correctly instructed the jury that it was "not required to infer that [the petitioner] intended the natural and probable consequences which ordinarily follow his voluntary action." The jury was in no way instructed that it was required to make such a conclusion. The petitioner's counsel could not properly challenge this correct statement of the law.

### III

The petitioner's final claim is that the habeas court improperly refused to address his assertion that his conviction was rendered in violation of due process.

The petitioner's amended application for habeas corpus was brought in three counts.[19] Count one alleged various violations of due process. Each of the claims in count one was repeated in either count two or three and rephrased in terms of ineffective assistance of counsel. In the petitioner's posttrial brief, his due process claims were addressed in general terms of the right to a fair trial and to be proven guilty beyond a reasonable doubt. The only specific claim addressed was the fact that the jury did not know that the date on the sales slip may not have been the date of the robbery. Each specific claimed impropriety was addressed in the final portion of the petitioner's posttrial brief, labelled: "The Petitioner was denied his right to due process and his right to effective assistance of trial and appellate counsel."[20]

In its memorandum of decision, the habeas court decided each of the petitioner's claims in terms of ineffective assistance of counsel. In finding that the petitioner was not prejudiced by the actions of either his trial or appellate counsel, the habeas court found also that "the petitioner [had] not shown that any of the claimed imperfections . . . violated any of his constitutional rights or created prejudice as defined in *Strickland* [v. *Washington,* supra, 466 U.S. 668]."

---

[19] See footnote 4.

[20] The petitioner acknowledged in his posttrial brief that his claims under both constitutional provisions are guided by the same standard. The petitioner stated: "Under the due process analysis and the *Strickland/Bunkley* analysis of ineffective assistance of counsel, the necessary determination to be made by [the habeas court] is whether or not the Petitioner's conviction is reliable."

On appeal, the petitioner claims that the habeas court improperly failed to address his claim that his conviction and imprisonment were obtained in violation of due process. In response to the petitioner's motion for articulation, the habeas court again reiterated that it was unnecessary to separately address the petitioner's claims under the rubric of due process.

We agree with the habeas court that the petitioner's due process claims were subsumed in his claims of ineffective assistance of counsel and need not have been addressed separately. Our Supreme Court has held that in situations "where the petitioner's claim of a violation of due process is so inextricably bound up in the issue of the effectiveness of his trial [or appellate] counsel . . . a separate claim of a violation of the right to due process is not required." *Commissioner of Correction* v. *Rodriquez*, supra, 222 Conn. 476. In reaching this conclusion, the Supreme Court reasoned: "If counsel has been ineffective in violation of the mandates of the sixth amendment to the United States constitution, then it follows, a fortiori, that the accused has been deprived of the right to a fair trial and to the concomitant right to due process." Id. A habeas court need not, therefore, separately address due process claims subsumed by claims of ineffective assistance of counsel. The habeas court's finding that the petitioner was not prejudiced by any of the alleged improprieties of trial and appellate counsel necessarily disposed of the petitioner's due process claims as well.

The judgment of the habeas court is affirmed.

In this opinion the other judges concurred.