[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a habeas matter, The petitioner, William T. Evans, by petition filed June 29, 1995, alleges illegal confinement by reason of ineffective assistance of habeas counsel.
The petitioner was the defendant in a criminal case, docket number CR 10-134699, in the Judicial District of New London. He was convicted after jury trial of Robbery in the First Degree, in violation of General Statutes, Section 53a-134 (a)(4), and as a persistent dangerous felony offender, pursuant to General Statutes, Section 53a-40 (a), and was sentenced on June 14, 1984 to a total effective sentence of 25 years. His conviction was appealed and was affirmed by the Supreme Court in State v. Evans,200 Conn. 350 (1986).
The petitioner filed a petition for writ of habeas corpus in the Judicial District of Tolland, docket number CV87-347, where it was tried to the court and dismissed. The petitioner appealed and the court's decision was reversed and the matter remanded,Evans v. Warden, 29 Conn. App. 274 (1992). The matter was transferred to the Judicial District of New Haven, numbered CV87-340058, and, following a hearing on the merits, was dismissed on September 17, 1993. Certification to appeal was granted and the judgment of the habeas court was affirmed, Evansv. Commissioner of Correction, 37 Conn. App. 672 (1995), petition for certification denied, 234 Conn. 912 (1995). It is habeas counsel's performance in representing the petitioner in CV 87-340058, which is the subject of the current habeas petition.
A hearing on the instant petition was held on November 12, 1998, at which both parties were represented. The petitioner was the sole witness. Both parties filed posthearing memoranda. The petitioner thereafter moved to reopen the hearing for the purpose of filing the transcript of the original trial in CR-10-134699, which motion was granted on March 17, 1999. CT Page 6424
 II
On September 30, 1983, a black male, described as approximately six feet tall, with a medium to large frame, approached the courtesy booth area of the Finast Supermarket in New London, displayed what appeared to be a gun, pushed a paper bag under the grill, and demanded that the employees fill it with money. They put bundles of cash totaling $1,950.00 into the bag, and the robber took it and left the store. Store employees described the robber as wearing a baseball cap with the letter "B" in the front, a purple shirt, and a light-colored jacket.
When The New London Police reported to the scene of the robbery, they were told that a two-tone car with a yellow body had left the Finast parking lot, driven by a black male. The description of the car and driver was broadcast on police radio, and about fifteen minutes after the robbery East Lyme Constable Bernard Douton observed a yellow vehicle on Interstate 95 and signaled it to pull over. The driver of the yellow car instead drove off the highway and then crashed into a stone wall. The driver ran away through a wooded area and was not apprehended. Police found on the seat of the yellow car a bag and money in the amount stolen from the Finast, divided into bundles as described by the store employees.
During the afternoon of September 30, 1983, following the robbery, Waterford Police recovered a purple shirt, a beige jacket and a baseball cap found along the highway near the intersection of Route 85 and Cross Road.
None of the store employees were able to identify the petitioner when shown a photo array, nor in court. Constable Douton, when shown a single photo of the petitioner on October 1, 1983, identified it as a likeness of the man he had pursued. Douton also made an in-court identification of the petitioner.
The petitioner claims that habeas counsel was ineffective in that:
a. she failed to plead and argue that the trial court had improperly charged that the only way that the defendant could have been found guilty of robbery in the first degree was if a jury found the actual presence of a pistol as an element of the crime; CT Page 6425
 b. she failed to plead that the trial court in its charge to the jury improperly marshalled the evidence for the state;
 c. she failed to plead that the trial court committed judicial misconduct by commenting on facts not in evidence, namely, although the FBI agent, Bannister, was not qualified as an expert in fingerprints, the Court, in its charge, told the jury that he was an expert;
 d. she failed to plead prosecutorial misconduct in that the prosecutor had suppressed evidence in the suppression hearing that the defendant could not have been wearing the purple shirt when Constable Douton saw him,
For the reasons stated below, the court concludes that each of the respondent's claims must fail.
 III
A person convicted of a crime is entitled to seek a writ of habeas corpus on the ground that his attorney in his prior habeas corpus proceeding rendered ineffective assistance, Losada v.Warden, 223 Conn. 834, 845. The "Strickland" test is applicable to counsels' performance, that is, the petitioner has the burden of showing (1) that the performance of habeas counsel was "deficient" in that it was outside the range of reasonable professional assistance of a competent [habeas] lawyer, and (2) that the deficient performance "prejudiced" the petitioner such that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different, Strickland v. Washington,466 U.S. 668, 687-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, Id., at 689-90. A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice, Nardini v. Manson, 207 Conn. 118, 124.
 IV CT Page 6426
The petitioner's first claim is that habeas counsel failed to plead and argue that the trial court had improperly charged that the only way that the defendant could have been found guilty of robbery in the first degree was if the jury found the actual presence of a pistol as an element of the crime. The petitioner acknowledges that an error in the charge requires reversal only if, in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict, citing State v. Sinclair, 197 Conn. 574, 581 and State v. Kurvin,186 Conn. 555, 558. A review of the trial court's instructions to the jury reveals that the court correctly reviewed the elements of robbery in the first degree repeatedly with the jury (Trial Transcript, May 11, 1984, pp. 581-94) Specifically, on page 590, the court says: "Now, again, the essential thing here is that the defendant represented by his words or conduct he is armed and has a pistol" (emphasis added). The petitioner complains that the court thereafter, in going over the elements of the offense still again, said, "If you find the State did not prove beyond a reasonable doubt the aggravating factor of the pistol, then you must find him not guilty of robbery in the first degree" (Transcript, p. 592). The petitioner argues that the jury was misled into believing that they could only convict if they found the actual presence of a pistol. This court is not persuaded. The court concludes that, viewing the charge as a whole, there was no reasonable possibility that the jury was misled by that portion of the charge complained of and, consequently, that the failure of habeas counsel to plead or argue this issue or raise it on appeal did not constitute ineffective assistance of counsel.
 V
The petitioner's second claim is that habeas counsel failed to claim that the trial court improperly marshalled the evidence in favor of the State. During the robbery in question, there were three witnesses at the site, who each gave the police a general description of the perpetrator, but were unable to identify the petitioner as that perpetrator when subsequently asked to pick the perpetrator from a photo array and were unable to make a positive identification in court. A witness, Constable Douton, pursued an individual driving a motor vehicle meeting the description of the "getaway" car. On the following day, Douton was unable to pick the petitioner from a photo array; later in the day he was shown a color photo of the petitioner and identified the petitioner as the man he'd pursued the previous day. At the time of trial Douton identified the petitioner as CT Page 6427 that man.
When charging the jury as to eye-witness identification, the trial court stated (Transcript, May 11, 1984, p. 595): "The only real person that qualifies, I would say as an eyewitness in this case, is Constable Douton. His testimony, of course is not to the robbery itself, but to the vehicle leaving the scene or a vehicle leaving the scene . . ." The petitioner claims that there were three eyewitnesses to the robbery itself, namely, Neilson, Philburn and Shanks, and the court made no comment regarding their failure to identify the petitioner, but clearly told the jury that the only person who qualified as an eyewitness was Douton, all in violation of the principles set down in State v.Fernandez, 198 Conn. 1, 11, 12. The petitioner claims the instruction complained of was biased and prejudicial to the petitioner and denied him his constitutional right to a new trial. The court disagrees. In context, it is clear that the court is addressing the issue of eyewitness identification. In stating that Douton was the only eyewitness, the court, by clear implication is saying that Douton is the only eyewitness who was able to identify the petitioner, and then, not as the perpetrator of the robbery, but as the man Douton later pursued. The tests of credibility of eyewitness identification suggested by the court could only be applied to Douton's identification testimony, as the other three witnesses had been unable to identify the petitioner. The court concludes that there is no reasonable possibility that the alleged marshalling of the evidence misled the jury, nor that it prejudiced the petitioner, nor that habeas counsel's failure to plead such allegation or raise it on appeal constituted ineffective assistance.
 VI
The petitioner's third claim is that habeas counsel should have identified and claimed that the trial court committed judicial misconduct by charging the jury to consider as expert testimony evidence which had not been introduced as expert testimony.
In the course of trial the State called a witness, FBI Agent Barry R. Bannister, who testified that he was a latent fingerprint specialist, experienced in the field of fingerprint identification and that he had been called upon to compare fingerprints and a palm print uncovered on certain items forwarded to his agency by the New London police with finger and CT Page 6428 palm prints of the petitioner. Bannister testified that in his opinion three fingerprints recovered from a sales slip attached to a brown bag in the "getaway" car, and a palm print found at the crime scene were those of the petitioner. A review of the trial transcript reveals that at no time did the prosecutor ask that Bannister be qualified as an expert witness, nor did the court declare him one.
Later, when instructing the jury, the trial court stated: "This witness testified as what we would call an expert witness.," (Transcript, May 11, 1984, p. 578). The petitioner characterizes this instruction as "evidence that was not in evidence", arguing that the trial court's informing the jury that Bannister was an expert was judicial misconduct and that the petitioner was prejudiced by "the jury's consideration of evidence that was not in evidence." Again, the court is not persuaded. Bannister testified that he had many years' experience in the field of fingerprint identification. He testified extensively on the methods he employed to develop fingerprints from the items forwarded him and to compare them with those of the petitioner. He was asked to give his opinion, based on his expertise, regarding whose prints were on the items forwarded to him, and did so without objection from the petitioner's trial counsel, who referred to Bannister as an "expert" (Trial Transcript, May 9, 1984, p. 442). The court concludes the trial court's reference to him as an expert witness in the course of jury instructions, conferred no unwarranted or prejudicial distinction on Bannister and his testimony. Indeed, the thrust of the court's instruction was that "the weight which is to be given to this opinion, evidence of this expert as with other witnesses, is something for you [the jury] to determine" (Transcript, p. 579) "Experts are merely giving an opinion to hel[p] you decide." ". . . you are as much judges of the weight, importance and credibility of the testimony of one who appears before you as an expert witness as you are of the those qualities and testimony of ordinary witnesses." The petitioner has failed to show that this jury instruction prejudiced him in any way, and the court concludes that habeas counsel's failure to raise this claim in the habeas proceeding or on appeal did not constitute ineffective assistance of counsel.
 VII
The petitioner's fourth claim is that habeas counsel failed to raise a claim of prosecutorial misconduct by virtue of the CT Page 6429 state's attorney's failure to provide to the petitioner, at the time of the suppression hearing on April 26, 1984, "the purple shirt, baseball cap with the letter "B" on it and tan-color jacket which were exculpatory and went to the direct reliability of the State's identification witness, Constable Bernard Douton."
It is well established that non-disclosure by the prosecution of evidence favorable to an accused is violative of the due process rights of the accused under the Federal and State Constitutions, Brady v. Maryland, 373 U.S. 83, 83 S. Ct 1194,10 L.Ed.2d 215 (1963); State v. Cohane, 193 Conn. 474, 495-6
(1984).
To prevail on a Brady claim, the defendant bears a "heavy" burden to establish: "(1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that it was material", State v. McIntyre, 242 Conn. 318, 323, quoting from State v. Milner, 206 Conn. 512, 539, 539 A.2d 80
(1988). "The test of materiality of nondisclosed exculpatory evidence requires that there be a `reasonable probability' that, had the evidence been disclosed to the defense the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome, State v. McIntyre, supra, at 323-4 (citations, internal quotation marks omitted).
The issues surrounding the "purple shirt" and Douton's testimony were addressed in Evans v. Commissioner of Correction,37 Conn. App. 672, 685-86, where the court reviewed the petitioner's claim that at the hearing on the petitioner's motion to suppress Douton's testimony that the suspect he chased was wearing a purple shirt could not have been true in light of the fact that at the time Douton was chasing the suspect, fellow officers were retrieving a purple shirt from the roadside near the scene of the crime. The Appellate Court found the claim without merit, holding that the habeas court correctly concluded that any possible inconsistency in the description of the clothing worn by the suspect chased by Douton would not have altered the outcome of the petitioner's criminal trial. Since the petitioner's claim of unreliability of Douton's testimony is premised precisely on the alleged inconsistency of Douton's testimony describing the clothing worn by the suspect Douton was chasing, there can have been no prejudice to the petitioner in the state's attorney's failure to turn over the clothing found by the roadside at the time of the suppression hearing. The petitioner claims that had CT Page 6430 the purple shirt been disclosed at the time of the suppression hearing, there is the real possibility that the judge presiding would have found Douton's identification of the petitioner was unreliable. In light of the evidence presented at the suppression hearing and assuming, arguendo, that the evidence cited was exculpatory, the petitioner has failed to show that there is a real possibility, much less a reasonable probability, that had the evidence been disclosed to the defense the result of the suppression hearing would have been different. The court finds that the petitioner has failed to show that habeas counsel, in failing to argue or appeal this issue, rendered ineffective assistance of counsel.
 VIII
The petitioner has failed to establish, by a fair preponderance of the evidence, any of his claims of ineffective assistance of habeas counsel. Accordingly, the relief requested is denied and the petition is dismissed.
Judgment may enter in favor of the respondent.
By the Court,
Downey, J.